# EVITTS, SUPERINTENDENT, BLACKBURN CORRECTIONAL COMPLEX, ET AL. *v.* LUCEY

No. 83–1378.   Argued October 10, 1984—Decided January 21, 1985

Brennan, J., delivered the opinion of the Court, in which White, Marshall, Blackmun, Powell, Stevens, and O'Connor, JJ., joined. Burger, C. J., filed a dissenting opinion, *post*, p. 405. Rehnquist, J., filed a dissenting opinion, in which Burger, C. J., joined, *post*, p. 406.

*J. Gerald Henry*, Assistant Attorney General of Kentucky, argued the cause for petitioners. With him on the briefs were *David L. Armstrong*, Attorney General, and *Paul E. Reilender, Jr.*, Assistant Attorney General.

*William M. Radigan* argued the cause and filed a brief for respondent.

Justice Brennan delivered the opinion of the Court.

*Douglas* v. *California*, 372 U. S. 353 (1963), held that the Fourteenth Amendment guarantees a criminal defendant the right to counsel on his first appeal as of right. In this case,

we must decide whether the Due Process Clause of the Fourteenth Amendment guarantees the criminal defendant the effective assistance of counsel on such an appeal.

## I

On March 21, 1976, a Kentucky jury found respondent guilty of trafficking in controlled substances. His retained counsel filed a timely notice of appeal to the Court of Appeals of Kentucky, the state intermediate appellate court. Kentucky Rule of Appellate Procedure 1.095(a)(1) required appellants to serve on the appellate court the record on appeal and a "statement of appeal" that was to contain the names of appellants and appellees, counsel, and the trial judge, the date of judgment, the date of notice of appeal, and additional information.[1] See *England* v. *Spalding*, 460 S. W. 2d 4, 6 (Ky. 1970) (Rule "is designed to assist this court in processing records and compliance is not jurisdictional"). Respondent's counsel failed to file a statement of appeal when he filed his brief and the record on appeal on September 12, 1977.[2]

---

[1] Kentucky Rule of Appellate Procedure 1.090 provided:

"In all cases the appellant shall file with the record on appeal a statement setting forth: (a) The name of each appellant and each appellee. . . . (b) The name and address of counsel for each appellant and each appellee. (c) The name and address of the trial judge. (d) The date the judgment appealed from was entered, and the page of the record on appeal on which it may be found. . . . (e) The date the notice of appeal was filed and the page of the record on appeal on which it may be found. (f) Such of the following facts, if any, as are true: (1) a notice of cross appeal has been filed; (2) a supersedeas bond has been executed; (3) any reason the appeal should be advanced; (4) this is a suit involving multiple claims and judgment has been made final . . . ; (5) there is another appeal pending in a case which involves the same transaction or occurrence, or a common question of law or fact, with which this appeal should be consolidated, giving the style of the other case; (6) the appellant is free on bond." As set forth in Brief for Petitioners 9–10, n. 3.

[2] The argument headings on the appellate brief were: "I. It Was Error to Admit Photographs of the Appellant Into Evidence Which Lacked Any Probative Value and Served Only to Mislead and to Arouse the Passion and Prejudice of the Jury. . . . II. The Trial Court's charge to the Jury Failed

When the Commonwealth filed its brief, it included a motion to dismiss the appeal for failure to file a statement of appeal. The Court of Appeals granted this motion because "appellant has failed to supply the information required by RAP 1.095(a)(1)." App. 37a. Respondent moved for reconsideration, arguing that all of the information necessary for a statement of appeal was in fact included in his brief, albeit in a somewhat different format. At the same time, respondent tendered a statement of appeal that formally complied with the Commonwealth Rules. The Court of Appeals summarily denied the motion for reconsideration. Respondent sought discretionary review in the Supreme Court of Kentucky, but the judgment of the Court of Appeals was affirmed in a one-sentence order. In a final effort to gain state appellate review of his conviction, respondent moved the trial court to vacate the judgment or to grant a belated appeal. The trial court denied the motion.

Respondent then sought federal habeas corpus relief in the United States District Court for the Eastern District of Kentucky. He challenged the constitutionality of the Commonwealth's dismissal of his appeal because of his lawyer's failure to file the statement of appeal, on the ground that the dismissal deprived him of his right to effective assistance of counsel on appeal guaranteed by the Fourteenth Amendment. The District Court granted respondent a conditional writ of habeas corpus ordering his release unless the Commonwealth either reinstated his appeal or retried him.[3]

---

to Meet the Requirements of the Due Process of Law. . . . III. The Appellant Was Denied His Constitutional Right to a Fair Trial by Improper Conduct During the Trial and by Prejudicial Comments Made by the Prosecutor During His Summation." App. 7a–9a. The merits of none of these claims are before us.

[3] The District Court also referred respondent's counsel to the Board of Governors of the Kentucky State Bar Association for disciplinary proceedings for "attacking his own work product." See id., at 44a. Respondent is not represented by the same counsel before this Court.

The Commonwealth appealed to the Court of Appeals for the Sixth Circuit, which reached no decision on the merits but instead remanded the case to the District Court for determination whether respondent had a claim under the Equal Protection Clause. *Lucey* v. *Seabold*, 645 F. 2d 547 (1981).

On remand, counsel for both parties stipulated that there was no equal protection issue in the case, the only issue being whether the state court's action in dismissing respondent's appeal violated the Due Process Clause. The District Court thereupon reissued the conditional writ of habeas corpus. On January 12, 1984, the Court of Appeals for the Sixth Circuit affirmed the judgment of the District Court. *Lucey* v. *Kavanaugh*, 724 F. 2d 560. We granted the petition for certiorari. 466 U. S. 949 (1984). We affirm.[4]

## II

Respondent has for the past seven years unsuccessfully pursued every avenue open to him in an effort to obtain a decision on the merits of his appeal and to prove that his conviction was unlawful. The Kentucky appellate courts' refusal to hear him on the merits of his claim does not stem from any view of those merits, and respondent does not argue in this Court that those courts were constitutionally required to render judgment on the appeal in his favor. Rather the issue we must decide is whether the state court's dismissal of the appeal, despite the inef-

---

[4] The Commonwealth informed this Court five days prior to oral argument that respondent had been finally released from custody and his civil rights, including suffrage and the right to hold public office, restored as of May 10, 1983. However, respondent has not been pardoned and some collateral consequences of his conviction remain, including the possibility that the conviction would be used to impeach testimony he might give in a future proceeding and the possibility that it would be used to subject him to persistent felony offender prosecution if he should go to trial on any other felony charges in the future. This case is thus not moot. See *Carafas* v. *LaVallee*, 391 U. S. 234, 238 (1968); *Sibron* v. *New York*, 392 U. S. 40, 55–57 (1968).

fective assistance of respondent's counsel on appeal, violates the Due Process Clause of the Fourteenth Amendment.

Before analyzing the merits of respondent's contention, it is appropriate to emphasize two limits on the scope of the question presented. First, there is no challenge to the District Court's finding that respondent indeed received ineffective assistance of counsel on appeal. Respondent alleges—and petitioners do not deny in this Court—that his counsel's failure to obey a simple court rule that could have such drastic consequences required this finding. We therefore need not decide the content of appropriate standards for judging claims of ineffective assistance of appellate counsel. Cf. *Strickland* v. *Washington*, 466 U. S. 668 (1984); *United States* v. *Cronic*, 466 U. S. 648 (1984). Second, the stipulation in the District Court on remand limits our inquiry solely to the validity of the state court's action under the Due Process Clause of the Fourteenth Amendment.[5]

Respondent's claim arises at the intersection of two lines of cases. In one line, we have held that the Fourteenth Amendment guarantees a criminal appellant pursuing a first appeal as of right certain minimum safeguards necessary to make that appeal "adequate and effective," see *Griffin* v. *Illinois*, 351 U. S. 12, 20 (1956); among those safeguards is the right to counsel, see *Douglas* v. *California*, 372 U. S. 353 (1963). In the second line, we have held that the trial-level right to counsel, created by the Sixth Amendment and applied to the States through the Fourteenth Amendment, see *Gideon* v. *Wainwright*, 372 U. S. 335, 344 (1963), comprehends the right to effective assistance of counsel. See *Cuyler* v. *Sullivan*, 446 U. S. 335, 344 (1980). The question presented in this case is whether the appellate-level right to counsel also comprehends the right to effective assistance of counsel.

---

[5] Seemingly, respondent entered the stipulation because his attorney on appeal had been retained, not appointed.

## A

Almost a century ago, the Court held that the Constitution does not require States to grant appeals as of right to criminal defendants seeking to review alleged trial court errors. *McKane* v. *Durston*, 153 U. S. 684 (1894). Nonetheless, if a State has created appellate courts as "an integral part of the . . . system for finally adjudicating the guilt or innocence of a defendant," *Griffin* v. *Illinois*, 351 U. S., at 18, the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution. In *Griffin* itself, a transcript of the trial court proceedings was a prerequisite to a decision on the merits of an appeal. See *id.*, at 13–14. We held that the State must provide such a transcript to indigent criminal appellants who could not afford to buy one if that was the only way to assure an "adequate and effective" appeal. *Id.*, at 20; see also *Eskridge* v. *Washington State Board of Prison Terms and Paroles*, 357 U. S. 214, 215 (1958) *(per curiam)* (invalidating state rule giving free transcripts only to defendants who could convince trial judge that "justice will thereby be promoted"); *Burns* v. *Ohio*, 360 U. S. 252 (1959) (invalidating state requirement that indigent defendants pay fee before filing notice of appeal of conviction); *Lane* v. *Brown*, 372 U. S. 477 (1963) (invalidating procedure whereby meaningful appeal was possible only if public defender requested a transcript); *Draper* v. *Washington*, 372 U. S. 487 (1963) (invalidating state procedure providing for free transcript only for a defendant who could satisfy the trial judge that his appeal was not frivolous).

Just as a transcript may by rule or custom be a prerequisite to appellate review, the services of a lawyer will for virtually every layman be necessary to present an appeal in a form suitable for appellate consideration on the merits. See *Griffin*, *supra*, at 20. Therefore, *Douglas* v. *California*, *supra*, recognized that the principles of *Griffin* required a

State that afforded a right of appeal to make that appeal more than a "meaningless ritual" by supplying an indigent appellant in a criminal case with an attorney. 372 U. S., at 358. This right to counsel is limited to the first appeal as of right, see *Ross* v. *Moffitt*, 417 U. S. 600 (1974), and the attorney need not advance *every* argument, regardless of merit, urged by the appellant, see *Jones* v. *Barnes*, 463 U. S. 745 (1983). But the attorney must be available to assist in preparing and submitting a brief to the appellate court, *Swenson* v. *Bosler*, 386 U. S. 258 (1967) *(per curiam)*, and must play the role of an active advocate, rather than a mere friend of the court assisting in a detached evaluation of the appellant's claim. See *Anders* v. *California*, 386 U. S. 738 (1967); see also *Entsminger* v. *Iowa*, 386 U. S. 748 (1967).

## B

*Gideon* v. *Wainwright, supra,* held that the Sixth Amendment right to counsel was " 'so fundamental and essential to a fair trial, and so, to due process of law, that it is made obligatory upon the States by the Fourteenth Amendment.' " *Id.*, at 340, quoting *Betts* v. *Brady*, 316 U. S. 455, 465 (1942); see also *Powell* v. *Alabama*, 287 U. S. 45 (1932); *Johnson* v. *Zerbst*, 304 U. S. 458 (1938). *Gideon* rested on the "obvious truth" that lawyers are "necessities, not luxuries" in our adversarial system of criminal justice. 372 U. S., at 344. "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." *Herring* v. *New York*, 422 U. S. 853, 862 (1975). The defendant's liberty depends on his ability to present his case in the face of "the intricacies of the law and the advocacy of the public prosecutor," *United States* v. *Ash*, 413 U. S. 300, 309 (1973); a criminal trial is thus not conducted in accord with due process of law unless the defendant has counsel to represent him.[6]

---

[6] Our cases dealing with the right to counsel—whether at trial or on appeal—have often focused on the defendant's need for an attorney to meet

As we have made clear, the guarantee of counsel "cannot be satisfied by mere formal appointment," *Avery* v. *Alabama*, 308 U. S. 444, 446 (1940). "That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. . . . An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Strickland* v. *Washington*, 466 U. S., at 685; see also *McMann* v. *Richardson*, 397 U. S. 759, 771, n. 14 (1970) ("It has long been recognized that the right to counsel is the right to the effective assistance of counsel"); *Cuyler* v. *Sullivan*, 446 U. S., at 344. Last Term, we emphasized this point while clarifying the standards to be used in assessing claims that trial counsel failed to provide effective representation. See *United States* v. *Cronic*, 466 U. S. 648 (1984); *Strickland* v. *Washington*, *supra*. Because the right to counsel is so fundamental to a fair trial, the Constitution cannot tolerate trials in which counsel, though present in name, is unable to assist the defendant to obtain a fair decision on the merits.

As the quotation from *Strickland*, *supra*, makes clear, the constitutional guarantee of effective assistance of counsel at trial applies to every criminal prosecution, without regard to whether counsel is retained or appointed. See *Cuyler* v.

---

the adversary presentation of the prosecutor. See, *e. g.*, *Douglas* v. *California*, 372 U. S. 353, 358 (1963) (noting the benefit of "counsel's examination into the record, research of the law, and marshalling of arguments on [client's] behalf"). Such cases emphasize the defendant's need for counsel in order to obtain a *favorable* decision. The facts of this case emphasize a different, albeit related, aspect of counsel's role, that of expert professional whose assistance is necessary in a legal system governed by complex rules and procedures for the defendant to obtain a decision at all—much less a favorable decision—on the merits of the case. In a situation like that here, counsel's failure was particularly egregious in that it essentially waived respondent's opportunity to make a case on the merits; in this sense, it is difficult to distinguish respondent's situation from that of someone who had no counsel at all. Cf. *Anders* v. *California*, 386 U. S. 738 (1967); *Entsminger* v. *Iowa*, 386 U. S. 748 (1967).

*Sullivan, supra,* at 342–345. The constitutional mandate is addressed to the action of the State in obtaining a criminal conviction through a procedure that fails to meet the standards of due process of law. "Unless a defendant charged with a serious offense has counsel able to invoke the procedural and substantive safeguards that distinguish our system of justice, a serious risk of injustice infects the trial itself. When a State obtains a criminal conviction through such a trial, it is the State that unconstitutionally deprives the defendant of his liberty." *Cuyler* v. *Sullivan, supra,* at 343 (citations omitted).

## C

The two lines of cases mentioned—the cases recognizing the right to counsel on a first appeal as of right and the cases recognizing that the right to counsel at trial includes a right to effective assistance of counsel—are dispositive of respondent's claim. In bringing an appeal as of right from his conviction, a criminal defendant is attempting to demonstrate that the conviction, with its consequent drastic loss of liberty, is unlawful. To prosecute the appeal, a criminal appellant must face an adversary proceeding that—like a trial—is governed by intricate rules that to a layperson would be hopelessly forbidding. An unrepresented appellant—like an unrepresented defendant at trial—is unable to protect the vital interests at stake. To be sure, respondent did have nominal representation when he brought this appeal. But nominal representation on an appeal as of right—like nominal representation at trial—does not suffice to render the proceedings constitutionally adequate; a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all.

A first appeal as of right therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney.[7] This result is

_____
[7] As *Ross* v. *Moffitt,* 417 U. S. 600 (1974), held, the considerations governing a discretionary appeal are somewhat different. See *infra,*

hardly novel. The petitioners in both *Anders* v. *California*, 386 U. S. 738 (1967), and *Entsminger* v. *Iowa*, 386 U. S. 748 (1967), claimed that, although represented in name by counsel, they had not received the type of assistance constitutionally required to render the appellate proceedings fair. In both cases, we agreed with the petitioners, holding that counsel's failure in *Anders* to submit a brief on appeal and counsel's waiver in *Entsminger* of the petitioner's right to a full transcript rendered the subsequent judgments against the petitioners unconstitutional.[8] In short, the promise of *Douglas* that a criminal defendant has a right to counsel on appeal—like the promise of *Gideon* that a criminal defendant has a right to counsel at trial—would be a futile gesture unless it comprehended the right to the effective assistance of counsel.

Recognition of the right to effective assistance of counsel on appeal requires that we affirm the Sixth Circuit's decision in this case. Petitioners object that this holding will disable state courts from enforcing a wide range of vital procedural rules governing appeals. Counsel may, according to petitioners, disobey such rules with impunity if the state courts are precluded from enforcing them by dismissing the appeal.

Petitioners' concerns are exaggerated. The lower federal courts—and many state courts—overwhelmingly have recog-

at 401–402. Of course, the right to effective assistance of counsel is dependent on the right to counsel itself. See *Wainwright* v. *Torna*, 455 U. S. 586, 587–588 (1982) *(per curiam)* ("Since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely") (footnote omitted).

[8] Moreover, *Jones* v. *Barnes*, 463 U. S. 745 (1983), adjudicated a similar claim "of ineffective assistance by appellate counsel." *Id.*, at 749. In *Jones*, the appellate attorney had failed to raise every issue requested by the criminal defendant. This Court rejected the claim, not because there was no right to effective assistance of appellate counsel, but because counsel's conduct in fact served the goal of "vigorous and effective advocacy." *Id.*, at 754. The Court's reasoning would have been entirely superfluous if there were no right to effective assistance of counsel in the first place.

nized a right to effective assistance of counsel on appeal.[9] These decisions do not seem to have had dire consequences for the States' ability to conduct appeals in accordance with

---

[9]See, *e. g.*, *Francois* v. *Wainwright*, 741 F. 2d 1275, 1284–1285 (CA11 1984); *Tsirizotakis* v. *LeFevre*, 736 F. 2d 57, 65 (CA2), cert. denied, *post*, p. 869; *Branch* v. *Cupp*, 736 F. 2d 533, 537–538 (CA9 1984); *Alvord* v. *Wainwright*, 725 F. 2d 1282, 1291 (CA11), cert. denied, *post*, p. 956; *Cunningham* v. *Henderson*, 725 F. 2d 32 (CA2 1984); *Doyle* v. *United States*, 721 F. 2d 1195 (CA9 1983); *Gilbert* v. *Sowders*, 646 F. 2d 1146 (CA6 1981) *(per curiam)* (dismissal of appeal because retained counsel ran afoul of "highly technical procedural rule" violated due process); *Perez* v. *Wainwright*, 640 F. 2d 596, 598, n. 3 (CA5 1981) (citing cases), cert. denied, 456 U. S. 910 (1982); *Robinson* v. *Wyrick*, 635 F. 2d 757 (CA8 1981); *Cleaver* v. *Bordenkircher*, 634 F. 2d 1010 (CA6 1980), cert. denied *sub nom. Sowders* v. *Cleaver*, 451 U. S. 1008 (1981); *Miller* v. *McCarthy*, 607 F. 2d 854, 857–858 (CA9 1979); *Passmore* v. *Estelle*, 594 F. 2d 115 (CA5 1979), cert. denied, 446 U. S. 937 (1980); *Cantrell* v. *Alabama*, 546 F. 2d 652, 653 (CA5), cert. denied, 431 U. S. 959 (1977); *Walters* v. *Harris*, 460 F. 2d 988, 990 (CA4 1972), cert. denied *sub nom. Wren* v. *United States*, 409 U. S. 1129 (1973); *Macon* v. *Lash*, 458 F. 2d 942, 949–950 (CA7 1972); *Hill* v. *Page*, 454 F. 2d 679 (CA10 1971) (performance of retained counsel on appeal to be judged by standards of *Anders* and *Entsminger)*; *Blanchard* v. *Brewer*, 429 F. 2d 89 (CA8 1970) (dismissal of appeal when retained counsel failed to serve papers properly held violation of due process); *Williams* v. *United States*, 402 F. 2d 548 (CA8 1968); see also *Harkness* v. *State*, 264 Ark. 561, 572 S. W. 2d 835 (1978) *(per curiam); People* v. *Barton*, 21 Cal. 3d 513, 579 P. 2d 1043 (1978); *Erb* v. *State*, 332 A. 2d 137 (Del. 1974); *Hines* v. *United States*, 237 A. 2d 827 (D. C. 1968); *Barclay* v. *Wainwright*, 444 So. 2d 956 (Fla. 1984); *McAuliffe* v. *Rutledge*, 231 Ga. 745, 204 S. E. 2d 141 (1974); *State* v. *Erwin*, 57 Haw. 268, 554 P. 2d 236 (1976); *People* v. *Brown*, 39 Ill. 2d 307, 235 N. E. 2d 562 (1968); *Burton* v. *State*, 455 N. E. 2d 938 (Ind. 1983); *Wilson* v. *State*, 284 Md. 664, 669–671, 399 A. 2d 256, 258–260 (1979); *Irving* v. *State*, 441 So. 2d 846, 856 (Miss. 1983); *People* v. *Gonzalez*, 47 N. Y. 2d 606, 393 N. E. 2d 987 (1979); *Shipman* v. *Gladden*, 253 Ore. 192, 453 P. 2d 921 (1969); *Commonwealth* v. *Wilkerson*, 490 Pa. 296, 416 A. 2d 477 (1980); *Grooms* v. *State*, 320 N. W. 2d 149 (S. D. 1982); *In re Savo*, 139 Vt. 527, 431 A. 2d 482 (1981); *Rhodes* v. *Leverette*, 160 W. Va. 781, 239 S. E. 2d 136 (1977). These cases diverge widely in the standards used to judge ineffectiveness, the remedy ordered, and the rationale used. We express no opinion as to the merits of any of these decisions.

reasonable procedural rules.   Nor for that matter has the longstanding recognition of a right to effective assistance of counsel at trial—including the recognition in *Cuyler* v. *Sullivan*, 446 U. S. 335 (1980), that this right extended to retained as well as appointed counsel—rendered ineffectual the perhaps more complex procedural rules governing the conduct of trials.   See also *United States* v. *Cronic*, 466 U. S. 648 (1984); *Strickland* v. *Washington*, 466 U. S. 668 (1984).

To the extent that a State believes its procedural rules are in jeopardy, numerous courses remain open.   For example, a State may certainly enforce a vital procedural rule by imposing sanctions against the attorney, rather than against the client.   Such a course may well be more effective than the alternative of refusing to decide the merits of an appeal and will reduce the possibility that a defendant who was powerless to obey the rules will serve a term of years in jail on an unlawful conviction.   If instead a state court chooses to dismiss an appeal when an incompetent attorney has violated local rules, it may do so if such action does not intrude upon the client's due process rights.   For instance the Kentucky Supreme Court itself in other contexts has permitted a postconviction attack on the trial judgment as "the appropriate remedy for frustrated right of appeal," *Hammershoy* v. *Commonwealth*, 398 S. W. 2d 883 (1966); this is but one of several solutions that state and federal courts have permitted in similar cases.[10]   A system of appeal as of right is established precisely to assure that only those who are

---

[10] In *Stahl* v. *Commonwealth*, 613 S. W. 2d 617 (1981), the Kentucky Supreme Court noted that, if on a postconviction motion the defendant could prove that counsel was ineffective on appeal, "the proper procedure is for the trial court to vacate the judgment and enter a new one, whereupon an appeal may be taken from the new judgment." *Id.*, at 618. See also *Rodriquez* v. *United States*, 395 U. S. 327, 332 (1969) (ordering similar remedy for denial of appeal in federal prosecution); *United States* v. *Winterhalder*, 724 F. 2d 109 (CA10 1983) *(per curiam)* (discussing remedies).

validly convicted have their freedom drastically curtailed. A State may not extinguish this right because another right of the appellant—the right to effective assistance of counsel—has been violated.

## III

Petitioners urge that our reasoning rests on faulty premises. First, petitioners argue that because the Commonwealth need not establish a system of appeals as of right in the first instance, it is immune from all constitutional scrutiny when it chooses to have such a system. Second, petitioners deny that respondent had the right to counsel on his appeal to the Kentucky Court of Appeals because such an appeal was a "conditional appeal," rather than an appeal as of right. Third, petitioners argue that, even if the Commonwealth's actions here are subject to constitutional scrutiny and even if the appeal sought here was an appeal as of right, the Due Process Clause—upon which respondent's claimed right to effective assistance of counsel is based—has no bearing on the Commonwealth's actions in this case. We take up each of these three arguments in turn.

## A

In support of their first argument, petitioners initially rely on *McKane* v. *Durston*, 153 U. S. 684 (1894), which held that a State need not provide a system of appellate review as of right at all. See also *Ross* v. *Moffitt*, 417 U. S., at 611; *Jones* v. *Barnes*, 463 U. S., at 751. Petitioners derive from this proposition the much broader principle that "whatever a state does or does not do on appeal—whether or not to have an appeal and if so, how to operate it—is of no due process concern to the Constitution . . . ." Brief for Petitioners 23. It would follow that the Kentucky court's action in cutting off respondent's appeal because of his attorney's incompetence would be permissible under the Due Process Clause.

The right to appeal would be unique among state actions if it could be withdrawn without consideration of applicable due

process norms. For instance, although a State may choose whether it will institute any given welfare program, it must operate whatever programs it does establish subject to the protections of the Due Process Clause. See *Goldberg* v. *Kelly*, 397 U. S. 254, 262 (1970). Similarly, a State has great discretion in setting policies governing parole decisions, but it must nonetheless make those decisions in accord with the Due Process Clause. See *Morrissey* v. *Brewer*, 408 U. S. 471, 481–484 (1972). See also *Graham* v. *Richardson*, 403 U. S. 365, 374 (1971); *Bell* v. *Burson*, 402 U. S. 535, 539 (1971); *Sherbert* v. *Verner*, 374 U. S. 398, 404 (1963); *Joint Anti-Fascist Refugee Committee* v. *McGrath*, 341 U. S. 123, 165–166 (1951) (Frankfurter, J., concurring). In short, when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution—and, in particular, in accord with the Due Process Clause.

## B

Petitioners' second argument relies on the holding of *Ross* v. *Moffitt, supra,* that a criminal defendant has a right to counsel only on appeals as of right, not on discretionary state appeals. According to petitioners, the Kentucky courts permit criminal appeals only on condition that the appellant follow the local rules and statutes governing such appeals. See *Brown* v. *Commonwealth,* 551 S. W. 2d 557, 559 (1977). Therefore, the system does not establish an appeal as of right, but only a "conditional appeal" subject to dismissal if the state rules are violated. Petitioners conclude that if respondent has no appeal as of right, he has no right to counsel—or to effective assistance of counsel—on his "conditional appeal."

Under any reasonable interpretation of the line drawn in *Ross* between discretionary appeals and appeals as of right, a criminal defendant's appeal of a conviction to the Kentucky Court of Appeals is an appeal as of right. Section 115 of the

Kentucky Constitution provides that "[i]n all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court." Unlike the appellant in the discretionary appeal in *Ross,* a criminal appellant in the Kentucky Court of Appeals typically has not had the benefit of a previously prepared trial transcript, a brief on the merits of the appeal, or a previous written opinion. See *Ross, supra,* at 615. In addition, petitioners fail to point to any source of Kentucky law indicating that a decision on the merits in an appeal like that of respondent—unlike the discretionary appeal in *Ross*—is contingent on a discretionary finding by the Court of Appeals that the case involves significant public or jurisprudential issues; the purpose of a first appeal in the Kentucky court system appears to be precisely to determine whether the individual defendant has been lawfully convicted. In short, a criminal defendant bringing an appeal to the Kentucky Court of Appeals has not previously had "an adequate opportunity to present his claims fairly in the context of the State's appellate process." See 417 U. S., at 616. It follows that for purposes of analysis under the Due Process Clause, respondent's appeal was an appeal as of right, thus triggering the right to counsel recognized in *Douglas* v. *California,* 372 U. S. 353 (1963).

## C

Finally, petitioners argue that even if the Due Process Clause does apply to the manner in which a State conducts its system of appeals and even if the appeal denied to respondent was an appeal as of right, the Due Process Clause nonetheless is not offended by the Kentucky court's refusal to decide respondent's appeal on the merits, because that Clause has no role to play in granting a criminal appellant the right to counsel—or *a fortiori* to the effective assistance of counsel—on appeal. Although it may seem that *Douglas* and its progeny defeat this argument, petitioners attempt to distinguish these cases by exploiting a seeming ambiguity in our previous decisions.

According to the petitioners, the constitutional requirements recognized in *Griffin, Douglas,* and the cases that followed had their source in the Equal Protection Clause, and not the Due Process Clause, of the Fourteenth Amendment. In support of this contention, petitioners point out that all of the cases in the *Griffin* line have involved claims by indigent defendants that they have the same right to a decision on the merits of their appeal as do wealthier defendants who are able to afford lawyers, transcripts, or the other prerequisites of a fair adjudication on the merits. As such, petitioners claim, the cases all should be understood as equal protection cases challenging the constitutional validity of the distinction made between rich and poor criminal defendants. Petitioners conclude that if the Due Process Clause permits criminal appeals as of right to be forfeited because the appellant has no transcript or no attorney, it surely permits such appeals to be forfeited when the appellant has an attorney who is unable to assist in prosecuting the appeal.

Petitioners' argument rests on a misunderstanding of the diverse sources of our holdings in this area. In *Ross* v. *Moffitt,* 417 U. S., at 608–609, we held that "[t]he precise rationale for the *Griffin* and *Douglas* lines of cases has never been explicitly stated, some support being derived from the Equal Protection Clause of the Fourteenth Amendment, and some from the Due Process Clause of that Amendment." Accord, *Bearden* v. *Georgia,* 461 U. S. 660, 665 (1983) ("Due process and equal protection principles converge in the Court's analysis in these cases"). See also Note, The Supreme Court, 1962 Term, 77 Harv. L. Rev. 62, 107, n. 13 (1963) (citing cases). This rather clear statement in *Ross* that the Due Process Clause played a significant role in prior decisions is well supported by the cases themselves.

In *Griffin,* for instance, the State had in effect dismissed petitioner's appeal because he could not afford a transcript. In establishing a system of appeal as of right, the State had implicitly determined that it was unwilling to curtail drastically a defendant's liberty unless a second judicial decision-

maker, the appellate court, was convinced that the conviction was in accord with law. But having decided that this determination was so important—having made the appeal the final step in the adjudication of guilt or innocence of the individual, see *Griffin*, 351 U. S., at 18—the State could not in effect make it available only to the wealthy. Such a disposition violated equal protection principles because it distinguished between poor and rich with respect to such a vital right. But it also violated due process principles because it decided the appeal in a way that was arbitrary with respect to the issues involved. In *Griffin*, we noted that a court dispensing "justice" at the trial level by charging the defendant for the privilege of pleading not guilty "would make the constitutional promise of a fair trial a worthless thing." *Id.*, at 17. Deciding an appeal on the same basis would have the same obvious—and constitutionally fatal—defect. See also *Douglas, supra,* at 357 (procedure whereby indigent defendant must demonstrate merit of case before obtaining counsel on appeal "does not comport with fair procedure"); *Anders* v. *California*, 386 U. S., at 744 ("constitutional requirement of substantial equality *and fair process* can only be attained where counsel acts in the role of an active advocate") (emphasis added).

Our decisions in *Anders, Entsminger* v. *Iowa*, 386 U. S. 748 (1967), and *Jones* v. *Barnes*, 463 U. S. 745 (1983), are all inconsistent with petitioners' interpretation. As noted above, all of these cases dealt with the responsibilities of an attorney representing an indigent criminal defendant on appeal.[11] Although the Court reached a different result in *Jones* from that reached in *Anders* and *Entsminger*, all of these cases rest on the premise that a State must supply indigent criminal appellants with attorneys who can provide specified types of assistance—that is, that such appellants have a right to effective assistance of counsel. Petitioners claim that all such rights enjoyed by criminal appellants have

---

[11] See *supra*, at 396–397.

their source in the Equal Protection Clause, and that such rights are all measured by the rights of nonindigent appellants. But if petitioners' argument in the instant case is correct, nonindigent appellants themselves have no right to effective assistance of counsel. It would follow that indigent appellants also have no right to effective assistance of counsel, and all three of these cases erred in reaching the contrary conclusion.

The lesson of our cases, as we pointed out in *Ross, supra,* at 609, is that each Clause triggers a distinct inquiry: " 'Due Process' emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated. 'Equal Protection,' on the other hand, emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." [12] In cases like *Griffin* and *Douglas,* due process concerns were involved because the States involved had set up a system of appeals as of right but had refused to offer each defendant a fair opportunity to obtain an adjudication on the merits of his appeal. Equal protection concerns were involved because the State treated a class of defendants—indigent ones—differently for purposes of offering them a meaningful appeal. Both of these concerns were implicated in the *Griffin* and *Douglas* cases and both Clauses supported the decisions reached by this Court.

*Affirmed.*

CHIEF JUSTICE BURGER, dissenting.

Few things have so plagued the administration of criminal justice, or contributed more to lowered public confidence in

---

[12] See also *Bearden* v. *Georgia,* 461 U. S. 660, 665 (1983). We went on in *Ross* to analyze the issue presented there—the right to counsel on discretionary appeals—primarily in terms of the Equal Protection Clause. See 417 U. S., at 611. However, neither *Ross* nor any of the other cases in the *Griffin* line ever rejected the proposition that the Due Process Clause exerted a significant influence on our analysis in this area.

the courts, than the interminable appeals, the retrials, and the lack of finality.

Today, the Court, as JUSTICE REHNQUIST cogently points out, adds another barrier to finality and one that offers no real contribution to fairer justice. I join JUSTICE REHN-QUIST in dissenting.

JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE joins, dissenting.

In this case the Court creates virtually out of whole cloth a Fourteenth Amendment due process right to effective assist-ance of counsel on the appeal of a criminal conviction. The materials with which it works—previous cases requiring that indigents be afforded the same basic tools as those who are not indigent in appealing their criminal convictions, and our cases interpreting the Sixth Amendment's guarantee of the "assistance of counsel" at a criminal *trial*—simply are not equal to the task they are called upon to perform.

The Court relies heavily on the statement in *Ross* v. *Moffitt,* 417 U. S. 600, 608–609 (1974), that "[t]he precise rationale for the *Griffin* and *Douglas* lines of cases has never been explicitly stated, some support being derived from the Equal Protection Clause . . . and some from the Due Process Clause." But today's Court ignores the conclusion of the six Justices who joined in *Ross:*

> "Unfairness results only if indigents are singled out by the State and denied meaningful access to the appellate system because of their poverty. That question is more profitably considered under an equal protection analy-sis." *Id.,* at 611.

As further precedential support for a right to due process on appeal, the Court cites passing dictum in *Bearden* v. *Georgia,* 461 U. S. 660 (1983), but that case has nothing to do with appellate review. In fact, this Court's precedents have not imposed any procedural requirements on state appeals other

than to bar procedures that operate to accord indigents a narrower scope of appellate review than nonindigents.

At one place in *Douglas* v. *California,* 372 U. S. 353, 357 (1963), the Court stated that the additional obstacles placed in the path of an indigent seeking to appeal a conviction did not "comport with fair procedure," but it explained this unfairness entirely in terms of inequality:

> "There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself." *Id.,* at 357–358.

Even the plurality in *Griffin* v. *Illinois,* 351 U. S. 12, 18–19 (1956), simply held that the Due Process and Equal Protection Clauses protect indigents from "invidious discriminations" on appeal and that such persons "must be afforded as adequate appellate review as defendants who have money enough to buy transcripts." Moreover, Justice Frankfurter, whose concurrence was necessary to the decision, viewed the decision as a matter of equal protection. *Id.,* at 21–22.

In similar vein, a fair reading of our other cases dealing with appellate review cited by the Court reveals uniform reliance on equal protection concepts and not due process.*

---

*See *Eskridge* v. *Washington State Board of Prison Terms and Paroles,* 357 U. S. 214, 216 (1958) *(per curiam)* ("[W]e . . . hold that, '[d]estitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts,'" quoting *Griffin,* 351 U. S., at 19); *Burns* v. *Ohio,* 360 U. S. 252, 258 (1959) ("Indigents must . . . have the same opportunities to invoke the discretion of the Supreme Court of Ohio"); *Lane* v. *Brown,* 372 U. S. 477, 484–485 (1963) ("The present case falls clearly within the area staked out by . . . *Griffin, Burns, Smith* [v. *Bennett,* 365 U. S. 708 (1961)], and *Eskridge.* . . ." "Such a procedure, based on indigency alone, does not meet constitutional standards"); *Draper*

Contrary to the Court's characterization, *Anders* v. *California*, 386 U. S. 738 (1967), *Entsminger* v. *Iowa*, 386 U. S. 748 (1967), and *Jones* v. *Barnes*, 463 U. S. 745 (1983), do not create for indigents a right to effective assistance of counsel on appeal and thus per force confer such a right on non-indigents; these cases simply require appointed appellate counsel to represent their clients with the same vigor as retained counsel ordinarily represent their paying clients.

Neither the language of the Constitution nor this Court's precedents establish a right to effective assistance of counsel on appeal. The Sixth Amendment provides that "[i]n all criminal *prosecutions,* the accused shall enjoy the right . . . to have the Assistance of Counsel for his *defense"* (emphasis added). As the Court observes, this language has been interpreted to confer a right to *effective* assistance of counsel, and its guarantee has been extended to state criminal prosecutions by incorporation into the Due Process Clause of the Fourteenth Amendment. But the words "prosecutions" and "defense" plainly indicate that the Sixth Amendment right to counsel applies only to trial level proceedings. At this stage, the accused needs an attorney "as a shield to protect him against being 'haled into court' by the State and stripped of

---

v. *Washington,* 372 U. S. 487, 496 (1963) ("[T]he duty of the State is to provide the indigent as adequate and effective an appellate review as that given appellants with funds—the State must provide the indigent defendant with means of presenting his contentions to the appellate court which are as good as those available to a nonindigent defendant with similar contentions"); *Anders* v. *California,* 386 U. S. 738, 745 (1967) ("assure penniless defendants the same rights and opportunities on appeal—as nearly as is practicable—as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel"); *Swenson* v. *Bosler,* 386 U. S. 258, 259 (1967) *(per curiam)* (assistance of counsel on only appeal as of right "may not be denied to a criminal defendant, solely because of his indigency"). See also *Entsminger* v. *Iowa,* 386 U. S. 748, 751–752 (1967) (relies on *Griffin-Douglas* line of cases and *Anders*); *Jones* v. *Barnes,* 463 U. S. 745, 750–754 (1983) (interpreting *Douglas* and *Anders*).

his presumption of innocence." *Ross* v. *Moffitt*, 417 U. S., at 610–611.

An appeal by a convicted criminal is an entirely different matter. He has been found guilty beyond a reasonable doubt and, if sentenced to a term of imprisonment, is subject to immediate deprivation of his liberty without any constitutional requirement of further proceedings. He seeks "to upset the prior determination of guilt" and universally is permitted to retain an attorney to serve "as a sword" in that endeavor. *Id.*, at 611. There is no question that an attorney is of substantial, if not critical, assistance on appeal, and those who can afford an attorney are well advised to retain one and commonly do so. Accordingly, as a matter of equal protection, we held in *Douglas* v. *California, supra*, that the States must provide an attorney to those who cannot afford one so that they stand on equal footing with nonindigents in seeking to upset their convictions. The Court, however, extends that right beyond its supporting rationale.

There is no constitutional requirement that a State provide an appeal at all. "It is wholly within the discretion of the State to allow or not to allow such a review." *McKane* v. *Durston*, 153 U. S. 684, 687 (1894). If a State decides to confer a right of appeal, it is free to do so "upon such terms as in its wisdom may be deemed proper." *Id.*, at 687–688. This decision was not a constitutional aberration. There was no right of appeal from federal convictions until 1889 when Congress granted a right of direct review in the Supreme Court in capital cases. In 1891 Congress extended this right to include "otherwise infamous" crimes. See *Carroll* v. *United States*, 354 U. S. 394, 400, n. 9 (1957); 1 J. Kent, Commentaries on American Law *325 (1896). Similarly, there was no right of appeal from criminal convictions in England until 1907. See *Griffin* v. *Illinois*, 351 U. S., at 21 (Frankfurter, J., concurring in judgment); E. Jenks, A Short History of English Law 353 (6th ed. 1949). In both coun-

tries, the concept of due process in criminal proceedings is addressed almost entirely to the fairness of the trial.

Citing *Wainwright* v. *Torna,* 455 U. S. 586, 587–588 (1982) *(per curiam),* the Court candidly acknowledges that "[o]f course, the right to effective assistance of counsel is dependent on the right to counsel itself." *Ante,* at 397, n. 7. Proper analysis of our precedents would indicate that apart from the Equal Protection Clause, which respondent has not invoked in this case, there cannot be a constitutional right to *counsel* on appeal, and that, therefore, even under the logic of the Court there cannot be derived a constitutional right to *effective assistance of counsel* on appeal.

The Court cites by analogy *Goldberg* v. *Kelly,* 397 U. S. 254 (1970), for the proposition that a State that confers a right to appeal, though not required to confer such a right, must establish appellate procedures that satisfy the Due Process Clause. *Goldberg* and the other so-called "entitlement" cases are totally inapposite. They turn on the fact that the State has created a form of "property," and the Due Process Clause by its express terms applies to deprivations of "property." True, the Due Process Clause also expressly applies to deprivations of "liberty," which is the basis for incorporating the Sixth Amendment right to counsel into the Fourteenth Amendment. But respondent's "liberty" was deprived by his lawful state criminal conviction, see *Ross* v. *Moffitt, supra,* at 610–611, not his unsuccessful attempt to upset that conviction by appellate attack. The statement in *Griffin* v. *Illinois, supra,* at 18, that Illinois has created appellate courts as "an integral part of the Illinois trial system for finally adjudicating the guilt or innocence of a defendant" is only a characterization of the Illinois court system by a plurality of the Court and is inconsistent with the general view of state appellate review expressed more recently by six Members of the Court in *Ross* v. *Moffit, supra,* at 610–611.

The consequences of the Court's decision seem undesirable. Challenges to trial counsel's performance have become routine in federal habeas petitions. Now lawfully convicted criminals who have no meritorious bases for attacking the conduct of their trials will be able to tie up the courts with habeas petitions alleging defective performance by appellate counsel. The result is akin to the effect created when a mirror is held facing another mirror, the image repeating itself to infinity.

Today's decision also undermines the ability of both the state and the federal courts to enforce procedural rules on appeal. Presumably, rules which are common to almost every appellate system in our country providing for dismissal of an appeal for failure to comply with reasonable time limits, see, *e. g.*, Fed. Rule App. Proc. 31(c), can no longer be enforced against a criminal defendant on appeal. The Court's understandable sympathy with a criminal defendant who has been badly served by the lawyer whom he hired to represent him in appealing his conviction has lead it to treat the Due Process Clause of the Fourteenth Amendment as a general dispensing authority, by the use of which the Court may indiscriminately free litigants from the consequences of their attorneys' neglect or malpractice. In most other areas of life and law we are bound, often to our prejudice, by the acts and omissions of our agents, and I do not believe that the Fourteenth Amendment prohibits the States from carrying over that generally recognized principle to the prosecution of appeals from a judgment of conviction.