Merrimack
No. 84-150
Coos
No. 84-145

THE STATE OF NEW HAMPSHIRE

v.

LON COOPER

THE STATE OF NEW HAMPSHIRE

v.

ELROY J. DUPUIS AND DIANE THERRIAULT

August 15, 1985

*Gregory H. Smith*, attorney general (*Amy L. Ignatius*, assistant attorney general, on the brief, and *Tina Schneider*, attorney, orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendants.

BATCHELDER, J. These consolidated appeals raise State and federal constitutional challenges to New Hampshire Supreme Court Rules 3 and 7 which permit this court to decline to accept an appeal. We hold the rules to be constitutional as we construe them in this opinion.

Lon Cooper was convicted by a jury in Merrimack County Superior Court (*Cann*, J.) of operating a motor vehicle after revocation of his driver's license. He was sentenced to serve ninety days in the house of correction, loss of license for an additional year, and a $250 fine. He filed a notice of appeal alleging that the trial court erred: (1) in denying his motion to dismiss at the close of the State's case; (2) in instructing the jury that evidence that notice of revocation was sent to the defendant's last known address is *prima facie* evidence that the defendant was notified of the revocation; and (3) in denying defendant's motion to dismiss on the ground that recent amendments to RSA 263:64, under which the defendant was convicted and sentenced, failed to provide sufficient notice of the conduct forbidden or the punishment authorized. On June 13, 1984, we declined acceptance of the appeal under Supreme Court Rule 7.

Elroy Dupuis and Diane Therriault were jointly tried before a jury in Coos County Superior Court (*Dickson*, J.). Both were charged with drug sales to a police informer. The sales, which occurred on August 29, 1983, involved five tablets of LSD for $15 and two grams of marijuana for $16. Both were sentenced to the State prison for terms of two to five years with one year suspended. Both were released on $1,000 personal recognizance bail pending appeal. Their joint notice of appeal raised the question whether the superior court committed reversible error both in denying defendants' motion for a directed verdict of acquittal and in permitting the State to reopen its case and recall its principal witness for the purpose of identifying the defendants as the persons who conducted the sale. On June 13, 1984, we declined to accept the appeal.

On June 21, 1984, the defendants in both of these appeals moved for reconsideration of the declination orders, challenging the constitutionality of the declination procedure under both the New Hampshire and the United States Constitutions. On July 31, 1984, we consolidated these cases for purposes of considering the constitutionality of Rule 7(1).

Supreme Court Rule 7(1) provides: "The supreme court may, in its discretion, decline to accept an appeal from a lower court after a decision on the merits, or may summarily dispose of such appeal as provided in [supreme court] rule 25." Supreme Court Rule 3 defines "Declination of acceptance order" to mean that : "The supreme court does not deem it desirable to review the issues in a case, as a matter

of sound judicial discretion and with no implication whatever regarding its views on the merits."

Defendants contend that, under the State and Federal Constitutions, the declination procedure denies due process, equal protection, and the effective assistance of counsel. Specifically, they argue that: (1) the rules permit this court arbitrarily and capriciously to decline acceptance of an appeal; (2) the "desirability" standard is vague and cannot properly form the basis for deciding which cases this court will or will not accept; (3) the distinctions made pursuant to the declination standard create irrational distinctions between "meritorious" and "non-meritorious" appeals; and (4) the declination procedure precludes counsel from effectively advocating the interests of his client before the court.

We begin, as we must, by first making an independent analysis of the protections afforded under the New Hampshire Constitution. *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983). In this case, decisions of the United States Supreme Court are particularly helpful as aids in our State constitutional analysis. *See Michigan v. Long*, 103 S. Ct. 3469, 3476 (1983).

■ The defendants do not argue that this court must hear all appeals. Federal cases have held that the Due Process Clause of the fourteenth amendment of the United States Constitution does not require appellate review by a State supreme court in a criminal case absent State constitutional or statutory authority to the contrary. *See McKane v. Durston*, 153 U.S. 684, 687 (1894); *Ross v. Moffitt*, 417 U.S. 600, 611 (1974). The defendants advance no claim that the State Constitution grants such a right. Nevertheless, we have demonstrated by our rules and long-standing practices, a solicitous regard for defendants who desire to obtain appellate review of their convictions. *State v. Howard*, 109 N.H. 518, 520, 257 A.2d 17, 19 (1969).

■■ The New Hampshire Constitution guarantees both due process and equal protection. N.H. CONST. pt. I, arts. 15 and 12; *see Appeal of Portsmouth Trust Co.*, 120 N.H. 753, 756, 423 A.2d 603, 605 (1980); *Gazzola v. Clements*, 120 N.H. 25, 29, 411 A.2d 147, 151 (1980); *see also* U.S. CONST. amend. XIV; *Griffin v. Illinois*, 351 U.S. 12 (1956). If a State has created appellate courts as "an integral part of the [State] trial system for finally adjudicating the guilt or innocence of a defendant," the procedures used in deciding appeals must comport with due process and equal protection. *Griffin v. Illinois*, *supra* at 18; *Evitts v. Lucey*, 105 S. Ct. 830, 834 (1985).

■ Due process and equal protection guarantee a variety of rights on appeal. N.H. CONST. pt. I, art. 15 (indigents' right to coun-

sel at expense of State); *see Griffin v. Illinois supra* (right of indigents to free transcript); *Evitts v. Lucey supra* and *Anders v. California*, 386 U.S. 738 (1967) (right to effective assistance of counsel). The line of demarcation between equal protection and due process in appellate rights cases was aptly stated recently by the United States Supreme Court as follows:

> "In *Griffin*, for instance, the State had in effect dismissed petitioner's appeal because he could not afford a transcript. In establishing a system of appeal as of right, the State had implicitly determined that it was unwilling to curtail drastically a defendant's liberty unless a second judicial decisionmaker, the appellate court, was convinced that the conviction was in accord with law. But having decided that this determination was so important—having made the appeal the final step in the adjudication of guilt or innocence of the individual—the State could not in effect make it available only to the wealthy. Such a disposition violated equal protection principles because it distinguished between poor and rich with respect to such a vital right. *But it also violated due process principles because it decided the appeal in a way that was arbitrary with respect to the issues involved.* In *Griffin*, we noted that a court dispensing 'justice' at the trial level by charging the defendant for the privilege of pleading not guilty 'would make the constitutional promise of a fair trial a worthless thing.' *Id.* at 17. Deciding an appeal on the same basis would have the same obvious—and constitutionally fatal—defect."

*Evitts v. Lucey*, 105 S. Ct. at 840 (emphasis added). The Court concluded:

> "In cases like *Griffin* and *Douglas* [*v. California*, 372 U.S. 353 (1963)], due process concerns were involved because the States involved had set up systems of appeals as of right *but had refused to offer each defendant a fair opportunity to obtain an adjudication on the merits of his appeal.*"

*Evitts v. Lucey*, 105 S. Ct. at 841 (emphasis added).

■ Procedural protections mandated by our State Constitution in discretionary appellate proceedings are less than in appeals as of right. *Id.* at 836 n.7 (citing *Ross v. Moffitt*, 417 U.S. 600 (1974)). The Court in *Moffitt* held that, under the Federal Constitution, counsel for an indigent defendant need not be provided in a discretionary

appeal, where counsel was provided in the defendant's first appeal as of right. *Compare* N.H. CONST. pt. I, art. 15 and RSA 604-A:1 (counsel for preparing appeals to this court provided to indigents at the expense of the State). In *Evitts v. Lucey*, the Court carefully scrutinized Kentucky appellate practice to determine that the appeal was an appeal as of right, and not a discretionary appeal. *Evitts v. Lucey*, 105 S. Ct. at 839. Only then did the Court conclude that the defendant enjoyed a due process right to the effective assistance of counsel on that appeal. *Id.* at 836, 841.

The defendants' equal protection claim, unlike those in *Douglas v. California supra, Griffin v. Illinois*, 351 U.S. 12 (1956), and *Ross v. Moffitt*, 417 U.S. 600 (1974), does not allege disparate treatment as a result of indigency of the appellants. Their claim is that classes of defendants having meritorious appeals and non-meritorious appeals will have their appeals accepted or declined without regard to any ascertainable or rational standard. The class of persons appealing their cases to this court is a "natural class of persons" sufficient to trigger equal protection concerns. *See Estate of Cargill v. City of Rochester*, 119 N.H. 661, 665–66, 406 A.2d 704, 706 (1979) (tort victims of governmental and private misconduct are a class); *Gazzola v. Clements*, 120 N.H. at 29, 411 A.2d at 151 (persons whose land is about to be taken by the State for different public purposes are similarly situated); *State v. Amyot*, 119 N.H. 671, 672–73, 407 A.2d 812, 813 (1979) (truckers carrying different loads in different parts of the State constitute a class). The equal protection question, therefore, like the due process question, becomes one of the rationality and ascertainability of the distinctions made by the declination procedure. Accordingly, our succeeding analysis addresses both equal protection and due process concerns with equal force.

 The right to appeal in New Hampshire is limited to the right to obtain a discretionary determination by this court as to whether it will accept the appeal. Our State constitutional guarantees of due process and equal protection nonetheless require that each and every defendant be offered a fair and equal opportunity to have his case accepted and thereby to obtain an adjudication on the merits of his appeal. N.H. CONST. pt. I, arts. 15 and 12; *cf. Estate of Cargill v. City of Rochester supra* (under part I, article 14 of the State Constitution, limits on access to courts are permissible so long as those limits are not arbitrary or discriminatory).

We begin by examining the declination of appeal procedure in New Hampshire. An appeal is initiated by the filing of a notice of appeal within thirty days of the decision in the trial court on the merits. SUP. CT. R. 7. The following information of consequence to the issues in the case is supplied on the notice of appeal form:

(a) In a criminal case, an indication whether the defendant is in jail or prison, the sentence, and the place of incarceration;

(b) A brief description of the nature of the case and the result;

(c) Identification of any statutes on which the case was based;

(d) Specific questions to be raised on appeal, expressed in terms and circumstances of the case, but without unnecessary detail;

(e) A list of cases supporting moving party's position;

(f) Photocopies of pleadings, motions, decisions (including findings and rulings); parties' memoranda and requests for findings and rulings; pertinent texts of legal authorities; and other documents;

(g) Transcript and exhibit requests.

With this information, the five members of this court collectively decide whether to accept or decline an appeal.

A declination of acceptance order is not a decision on the merits. The definition in Supreme Court Rule 3 provides that, where there is a declination order: "The supreme court does not deem it desirable to review the issues in [the] case, as a matter of sound judicial discretion and with no implication whatever regarding its views on the merits." *Cf.* SUP. CT. R. 25 (summary affirmance *on the merits*); *Smith v. Goodnow*, #C83-120-L (D.N.H., September 26, 1983) (procedure by which New Hampshire Supreme Court summarily affirmed conviction *on the merits* as supported by sufficient evidence, in the absence of a transcript, was arbitrary in violation of federal due process clause). A declination of acceptance order expresses no opinion on the quality or correctness of either the decision below or the arguments to be advanced by counsel on appeal. The declination is not a precedent for future declinations, nor does the opinion below assume any greater or lesser precedential value after the declination than it had before.

The standard governing the making of a declination decision is one of sound judicial discretion with respect to the desirability of our hearing and deciding the case. This standard, though characterized as being "vague" and "unascertainable" by the defendants, nevertheless embodies considerable meaning. The rules are closely tied to our institutional role as supervisory court and court of last resort of this State, *see* N.H. CONST. pt. II, arts. 73-a and 72-a, and are essential to our continued fulfillment of that role in a responsible and deliberate manner.

This court hears appeals and receives transfers from the State's superior, district, municipal and probate courts—some seventy-two different courts in all—and from scores of the State's administrative agencies, as well as transfers from the United States District Court and the United States Circuit Court of Appeals. *See* SUP. CT. R. 34. We also consider petitions for the exercise of original jurisdiction and render advisory opinions to the Governor and Council and to each house of the State Legislature. *See* N.H. CONST. pt. II, art. 74.

Our appellate caseload has mushroomed in recent years. Between 1981 and 1984, the number of cases filed in this court increased from 482 to 603, a 25 percent increase in three years. The number of cases pending at the end of the year has increased between 1980 and 1984 from 244 to 361, a 48 percent increase in only four years. The court's supervision of a unified court system, *see* N.H. CONST. pt. II, art. 73-a (adopted in 1978); Laws 1983, ch. 383, has increased the court's workload steadily, requiring it now to be.involved in many areas of judicial administration, ranging from adoption of rules of evidence for the State's trial courts to administration of a staff of close to 600 persons.

A similar explosion of cases and workload occurred with the United States Supreme Court sixty years ago. *See* R. STERN & E. GRESSMAN, SUPREME COURT PRACTICE (4th ed. 1969) at 147–54. There, a burgeoning docket of cases within the Court's obligatory appellate jurisdiction prompted the 1925 passage of legislation giving the Court discretionary jurisdiction over most of its caseload. Numerous States, as well, facing expanding appellate dockets over the years, have chosen discretionary appellate jurisdiction as a means of controlling the caseloads of their high courts. *See* R. STERN, APPELLATE PRACTICE IN THE UNITED STATES at 22–23, 137–42.

The various standards of discretion in use in State courts across the nation have many common features. *See* STERN at 137–42. The rules generally stress that review will be granted where there is a strong public interest to be served by resolving the questions presented, where there is conflict between the decision below and some other controlling precedent, or where the error alleged in the particular case demands attention to prevent injustice.

For example, Illinois Rule 315(a), which was modeled on United States Supreme Court Rule 17, *see* STERN at 137, states:

> "The following, while neither controlling nor fully measuring the court's discretion, indicate the character of reasons which will be considered: the general importance of the question presented; the existence of a conflict between

the decision sought to be reviewed and a decision of the Supreme Court, or of another division of the Appellate Court; the need for the exercise of the Supreme Court's supervisory authority; and the final or interlocutory character of the judgment sought to be reviewed."

Tennessee's rule states:

"In determining whether to grant permission to appeal, the following, while neither controlling nor fully measuring the Court's discretion, indicate the character of reasons that will be considered: (1) the need to secure uniformity of decision, (2) the need to secure settlement of important questions of law, (3) the need to secure settlement of questions of public interest, and (4) the need for the exercise of the Supreme Court's supervisory authority."

TENN. R. APP. PRO., Rule 11(a); *cf.* MASS. GEN. LAWS ANN. ch. 211A § 11 (West Supp. 1985) (allowing further appellate review "for substantial reasons affecting the public interest or the interests of justice").

These same considerations enter into our decision to accept or decline an appeal, and define the contours of our "desirability" standard for exercising our discretion to accept an appeal. Such factors necessarily leave us broad discretion to control our caseload while performing our responsibility under our State Constitution to supervise the courts of this State. While these factors are not inclusive of all considerations entering into our declination decisions, our explanation of their relevance should focus the attention of the bench and bar upon appropriate areas of concern in the acceptance or declination procedure and thereby help to dispel the fear of arbitrariness in fact and appearances.

██ The defendants have argued that an explanation or revision of our declination standard will not adequately address the constitutional infirmities of the declination procedure. They argue under *Ross v. Moffitt*, 417 U.S. 600 (1974), that such considerations may be adequate where a *first appeal* has been provided *as of right*, but not where the discretionary appeal is the first and only error-correction opportunity available to the defendant in the State justice system. We disagree. Accepting defendants' argument would foreclose all permissible exercises of discretion in accepting or declining appeals and would operate as the functional equivalent of a constitutionally mandated appeal of right. Neither the State Constitution nor the Federal Constitution requires such a result, directly or indirectly.

128

The defendants further argue that acceptance of a criminal case where incarceration is imposed should not be declined because such a case involves a threat to a greater interest than most civil, domestic, or administrative cases, or criminal cases not involving jail terms. While a greater interest of the defendant may be at stake where incarceration has been imposed, that factor *alone* does not compel acceptance of an appeal. Incarceration is a relevant factor in determining whether a potential error below presents a risk of clear injustice and a question of public importance.

From 1978 to 1982, 22.2 percent of our opinions were rendered in criminal cases. The remainder, 77.8 percent, were in civil, administrative, domestic relations and other cases. That trend took a dramatic turn in 1983 and 1984, in which 34 percent and 36 percent of our opinions respectively involved criminal subject matter. The average of these latter two figures reflects an increase of criminal cases decided of almost 13 percent over the average for the preceding five years.

■■■ Our declination procedure is a necessary and proper part of our constitutional exercise of the judicial power in this State and of our responsibility for administration of the court system. Were we to accept all criminal appeals, or all criminal appeals involving incarceration, or all cases in any other class, without regard to other factors, we would have to reject cases which we would otherwise have accepted, in order to maintain a manageable docket. This result would be even more arbitrary than the result which the defendants allege is produced by our current rules, for it assumes that all criminal cases present more important or more compelling issues than civil, domestic, administrative or other cases. This is simply not so. Our responsibility is to administer justice and supervise the development of the law "across the board" in this State. Our declination rule, as a discretionary mechanism, is well-suited to assuring that the opinions of this court address a reasonably balanced blend of cases and are carefully and deliberately decided.

Our State's notice of appeal form provides a flexible and comprehensive format for a litigant to explain the factual posture of his case, the legal questions raised by the appeal and the controlling (or conflicting) precedents. The gravity of the legal issues and any clear injustice is readily apparent from a properly drafted notice of appeal.

■■■ We conclude that our declination of appeal procedure is neither arbitrary nor capricious, but rather is rationally related to discharging our responsibilities equitably and effectively. The standard by which we accept or decline appeals, as stated in

Supreme Court Rules 3 and 7 and explained in this opinion, is not vague. Accordingly, we find no due process or equal protection violations inherent in this procedure under our State Constitution.

The use we have made of federal constitutional precedents in analyzing our State Constitution in this case leads us to conclude that no broader protection is afforded by the United States Constitution. *See Michigan v. Long*, 103 S. Ct. at 3476. Under federal due process, the question of whether an appeal provided in the State system is one of right or of discretion is a federal question. *See Evitts v. Lucey*, 105 S. Ct. at 839. That determination, however, rests upon applicable State authorities conferring the appellate remedy. *See id.* (analysis of Kentucky Constitution to conclude that appeal in question was an appeal of right for federal due process purposes). The federal constitutional analysis thereafter employs the same standards as are set forth in our State constitutional analysis, and therefore leads us to the same conclusion that the rules do not deny due process and equal protection.

The defendants further allege that our declination procedure denies the effective assistance of counsel under both the State and the Federal Constitutions. Specifically, they argue that the right to effective assistance guarantees a right for counsel to present arguments directed to the merits of the case or, at least, to the declination standard.

The right to the effective assistance of counsel does not grant a defendant who is represented by counsel any broader rights or opportunities to present arguments than those enjoyed by a defendant who is not represented by counsel. This right to present arguments on the merits is a due process issue which we have adequately addressed above.

*Motions for reconsideration denied.*

All concurred.