974 F.2d 1329
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Michael B. FORTE, Plaintiff, Appellant,
v.
Janis SULLIVAN, et al., Defendants, Appellees.
 No. 91-2235.
 United States Court of Appeals,
First Circuit.
 Aug. 28, 1992
 
 Michael B. Forte on brief pro se.
 Scott Harshbarger, Attorney General, Massachusetts, and Mary E. McLaughlin, Assistant Attorney General, Department of the Attorney General, on brief for appellees.
 Before Torruella, Circuit Judge, Campbell, Senior Circuit Judge, and Selya, Circuit Judge.
 Per Curiam.
 
 
 1
 Plaintiff Michael Forte, a Massachusetts inmate, appeals from a district court judgment that dismissed his 42 U.S.C. § 1983 complaint against Arnold Rosenfeld, Chief Counsel for the Massachusetts Committee for Public Counsel Services (CPCS), and Diane Hanson, Legal Assistant to the CPCS. The complaint alleged that these defendants, both employees of a state agency charged with coordinating the delivery of legal services to indigent criminal defendants, deprived plaintiff of his constitutional right to counsel on appeal and, ultimately, his right to appeal from his criminal conviction, by refusing to appoint a new attorney to represent him after three attorneys had been appointed and withdrawn from his case. The district court dismissed the complaint on the ground that the defendants are entitled to qualified immunity. We affirm.
 
 I.
 
 2
 The complaint, as fleshed out by the plaintiff's opposition to the defendants' motion to dismiss, alleged the following facts. Forte was arrested in April 1987 and charged with breaking and entering, among other crimes. Sometime in December 1987, Forte was tried, convicted and sentenced to a 15-20 year term on the breaking and entering charge. At trial, Forte was represented by an attorney employed by the CPCS. In early 1988, Forte filed a pro se motion to enlarge the time for him to file his notice of appeal. In May 1989, attorney Thomas Merrigan was assigned to represent Forte on this motion. Attorney Merrigan subsequently withdrew for reasons not stated in the complaint. In July 1989, attorney Jack Curtiss was assigned to Forte's case. He withdrew on November 21, 1989, citing completion of the task of filing Forte's notice of appeal. On December 20, 1989, the CPCS assigned attorney Robert Sheketoff to Forte's appeal. Forte alleged that attorney Sheketoff refused to file an appellate or an Anders-type brief and that he withdrew at Forte's request. Forte's opposition to the defendants' motion to dismiss elaborated that attorney Sheketoff was allowed to withdraw by an April 11, 1990 order of a single justice of the Massachusetts Appeals Court. Although Forte moved for reconsideration, the Appeals Court denied his motion on April 13, 1990. Forte alleged that the order allowing attorney Sheketoff to withdraw affirmatively required the CPCS to appoint new counsel for him and that the order denying his motion for reconsideration maintained this requirement. While the defendants dispute this, as we are reviewing a dismissal pursuant to Fed. R. Civ. P. 12(b)(6), we must assume that the plaintiff's allegations are true.[1]
 
 
 3
 Shortly after attorney Sheketoff withdrew, Forte asked Rosenfeld to appoint successor defense counsel. On April 21, 1990, Forte received a letter from the CPCS requesting him to submit the names of three lawyers he would like to represent him on appeal. Forte complied. On June 19, 1990, Forte received a letter from Rosenfeld which stated, "I have contacted the three attorneys and none is willing to accept this assignment. Please arrange for your own counsel and notify who it is, and we will compensate that attorney."
 
 
 4
 On October 17, 1990, a single justice of the Massachusetts Supreme Judicial Court (SJC) issued a Notice of Assignment of Counsel form which allegedly required the CPCS to appoint counsel to represent Forte in his criminal appeal. Forte alleged that he spoke with Hanson on three occasions after this order issued, each time requesting that the CPCS assign counsel to represent him. Hanson told Forte that he must locate his own counsel.[2]
 
 
 5
 At some point Forte received a letter from Hanson that was dated January 28, 1991. The letter, which was also appended to Forte's opposition to the defendants' motion to dismiss, stated:
 
 
 6
 After speaking to Attorneys Curtiss and Sheketoff I realize that you discharged them. Attorney Merrigan has become a judge and is unavailable for any comments concerning your case. I have called Attorneys Wendy Sibbison, Allen Dershowitz, and Max Stern as well as submitting a written request for representation to Laurence Tribe per your request. The above mentioned have declined to accept your case. As you know, Attorney Silverglate, with whom you corresponded, has also rejected your case. It appears that you have exhausted our resources as well as your own to obtain compatible counsel for you. It may be that you wish to proceed pro se. In that event, you should contact the Appeals Court for briefing dates and all other pertinent information.
 
 
 7
 Hanson sent a copy of this letter to the clerk of the Massachusetts Appeals Court, where Forte's appeal was pending. On February 6, 1991, a single justice of that court endorsed Hanson's letter with an order requiring Forte to proceed on appeal pro se. On June 4, 1991, Forte's appeal was dismissed because Forte had failed to file his appellate brief. Forte filed this action on June 26, 1991.
 
 
 8
 The complaint alleged that the defendants' acts and omissions violated Forte's First, Sixth, and Fourteenth Amendment rights. Specifically, Forte claimed that the defendants maliciously refused to appoint counsel to represent him on appeal because he had expressed the view that his trial counsel, who was also employed by the CPCS, had rendered him ineffective assistance. Forte claimed that the defendants exhibited reckless, callous and deliberate indifference to his constitutional rights and proximately caused his loss of his constitutional right to counsel on appeal and, ultimately, his right to appeal his conviction. Forte also alleged that both defendants violated M.G.L. c. 211D.[3]
 
 
 9
 The defendants filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). They argued that all their acts were protected by absolute judicial or "quasi-judicial" immunity since the basis of Forte's suit was the denial of "court-appointed counsel" on appeal and this denial resulted from the February 6, 1991 order of the Massachusetts Appeals Court. Plaintiff filed an opposition to the motion to dismiss which argued that the defendants did not have either absolute or qualified immunity from liability. The district court allowed the defendants' motion to dismiss. In a brief margin order, the court noted, "[t]o the degree that state action is alleged, the direction of the Appeals Court that plaintiff proceed pro se affords defendants at a minimum qualified immunity sufficient to justify dismissal on these papers." This appeal followed.
 
 II.
 
 10
 "In reviewing a dismissal of a complaint under Fed. R. Civ. P. 12(b)(6), we treat all well-pleaded factual averments as true and draw all reasonable inferences therefrom in the ... [plaintiff-appellant's] favor." Gilbert v. City of Cambridge, 932 F.2d 51, 53 (1st Cir.), cert. denied, 112 S. Ct. 192 (1991) On appeal, Forte argues that the defendants are not entitled to qualified immunity because most of their conduct preceded the Appeals Court's February 6, 1991 order and the defendants cannot claim immunity for failing to appoint him counsel after the order issued because the order was obviously unconstitutional. Forte further argues that the defendants were performing ministerial functions to which qualified immunity could not attach. Finally, Forte contends that the defendants conspired with the Appeals Court to deprive him of his right to counsel, therefore the order requiring him to proceed pro se cannot provide the defendants with "derivative immunity." The defendants maintain that they are protected by both absolute and qualified immunity and that the complaint fails to specify sufficient facts to state a claim upon which relief can be granted. We begin with qualified immunity.
 
 III.
 
 11
 " '[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Rodi v. Ventetuolo, 941 F.2d 22, 30 (1st Cir. 1991)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The test for determining whether a "clearly established right" has been violated requires more than an assessment of whether the general right the plaintiff claims was violated was clearly established at the time of the defendant's conduct. Rather, Anderson v. Creighton, 483 U.S. 635, 639-40 (1987), makes clear that "the right the official is alleged to have violated must have been 'clearly established' in a more particularized ... sense ... [i.e.] -The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (emphasis supplied). While the precise action need not have been held unlawful, the preexisting law must make its unlawfulness apparent. Id. "Only where the action in question was clearly unlawful does a defendant lose his qualified immunity." Juarbe-Angueira v. Arias, 831 F.2d 11, 12 (1st Cir. 1987), cert. denied, 485 U.S. 960 (1988).
 
 
 12
 Here, Forte's constitutional right to effective counsel on his first criminal appeal of right was well-established at the time of the defendants' alleged misconduct. See, e.g., Evitts v. Lucey, 469 U.S. 387, 391-405 (1985); Douglas v. California, 372 U.S. 353, 355-58 (1962). Equally well established was the proposition that nominal representation on an appeal of right is not constitutionally adequate. Rather, effective assistance of counsel is required. Evitts, 469 U.S. at 396. And while there is no constitutional right to appeal from a state criminal conviction, where state law creates such a right, "the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." Id. at 393. These rights notwithstanding, an indigent defendant does not have the right to be represented by a particular lawyer, nor to have repeated demands for a different appointed lawyer satisfied absent good cause. United States v. Allen, 789 F.2d 91, 92 (1st Cir.), cert. denied, 479 U.S. 846 (1986). As we stated in Allen, id. at n. 4,
 
 
 13
 Appellant's right was to effective counsel, not to counsel of his own choice at any cost in terms of delay ... This restraint is to ensure that the right is not manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice. (citation omitted).
 
 
 14
 The right to proceed pro se is als o constitutionally protected. Faretta v. California, 422 U.S. 806 (1975). "While 'the right to counsel is in force until waived, the right to self-representation does not attach until asserted.' " United States v. Allen, 789 F.2d at 94. The law in this circuit requires that a defendant make a clear and unequivocal waiver of his right to counsel before being allowed to proceed pro se. See, e.g., United States v. Betancourt-Arretuche, 933 F.2d 89, 92 (1st Cir.), cert. denied, 112 S. Ct. 421 (1991).[4] While we have not required district courts to give indigent defendants a particular warning or to engage in a specific colloquy before allowing a defendant to proceed pro se, a waiver of the right to counsel may not be inferred from a silent record. See Carnley v. Cochran, 369 U.S. 506, 516 (1962); United States v. Campbell, 874 F.2d 838, 845 (1st Cir. 1989). "While a defendant may not be forced to proceed to trial with incompetent or unprepared counsel ..., a refusal without good cause to proceed with able appointed counsel is a 'voluntary' waiver." Maynard v. Meachum, 545 F.2d 273, 278 (1st Cir. 1976)(citation omitted).
 
 
 15
 The defendants, as employees of the state agency charged with overseeing the delivery of legal services to indigent defendants, are presumed to have knowledge of these basic constitutional standards. Borucki v. Ryan, 827 F.2d 836, 838 (1st Cir. 1987). That these principles were well-established at the time of the defendants' conduct does not end the qualified immunity inquiry. We must next inquire whether the defendants reasonably could have believed their actions were lawful in light of these principles and the information they possessed when they acted.
 
 
 16
 Forte says that before the Appeals Court ordered him to proceed pro se, both defendants violated his right to counsel on appeal by steadfastly refusing to appoint a fourth attorney to represent him even though both the Massachusetts Appeals Court and Supreme Judicial Court issued orders requiring the CPCS to appoint an attorney to represent him.[5] But the specific facts alleged in Forte's complaint and supporting documents do not support Forte's characterization of the defendants' conduct. Before April 1990, the defendants did not refuse to appoint counsel, rather they appointed a succession of three attorneys, two of whom withdrew from Forte's case at Forte's apparent behest.[6] After attorney Sheketoff withdrew, the defendants contacted three or four additional attorneys on Forte's behalf, each of whom declined to take his case. At that point Rosenfeld put the burden on Forte to locate his own counsel and agreed that the CPCS would compensate any attorney Forte might find.[7] Hanson maintained this position.
 
 
 17
 It is by no means clearly established that a state public defender violates an indigent criminal appellant's rights by requiring that appellant find a compatible attorney, at the expense of the public defender's office, after three attorneys had been appointed by that office and had withdrawn. Contrary to plaintiff's argument on appeal, we do not think that the defendants' acts in requiring plaintiff to find his own lawyer were tantamount to an outright refusal to appoint counsel. To the contrary, defendant Rosenfeld offered to compensate any attorney selected by plaintiff and willing to serve. And where Rosenfeld made clear that any counsel Forte found would be paid for by the CPCS, we cannot say that this act deprived Forte of his right to counsel on appeal. Forte has not alleged any facts which would show he was not able to contact attorneys. To be sure, the attorneys Forte requested were all renowned and, perhaps, unlikely to take his appeal from a breaking and entering conviction. Nevertheless, Forte has not alleged any reason why he could not find an attorney on his own. On this record, then, the defendants are entitled to qualified immunity for their conduct that preceded the Appeals Court's order requiring Forte to proceed pro se.[8]
 
 
 18
 Forte contends that defendants cannot derive any immunity from the Appeals Court's order because it was obviously unconstitutional. He argues that Hanson solicited this order with deliberate indifference to his rights by sending a copy of her January 28, 1991 letter to the clerk of that court. The facts alleged warrant the inference that the Appeals Court ordered Forte to proceed pro se in response to Hanson's letter. At the time Hanson sent this letter to the Appeals Court, she had reason to know that Forte maintained that he was asserting his right to counsel, for he allegedly had three telephone conversations with her between October 1990 and January 1991 in which he requested the CPCS to appoint another attorney for him. Where the January 28, 1991 letter only queried whether plaintiff wished to proceed pro se, the Appeals Court may have been on questionable ground in ordering Forte to proceed pro se absent a clear and unequivocal waiver of Forte's right to counsel. On the other hand, it might be argued that Forte voluntarily acquiesced in his pro se status on appeal by virtue of the fact that he did not seek reconsideration or otherwise challenge the Appeals Court's order during the four months that elapsed between its entry and the dismissal of his appeal. See Maynard v. Meachum, 545 F.2d at 277 (where record shows habeas petitioner's "affirmative acquiescence" in proceeding without counsel at trial, burden fell on him to show that his acquiescence was not sufficiently understanding to amount to effective waiver). We need not decide the point for the complaint has not alleged any facts to suggest that Hanson had reason to believe that the simple act of sending the Appeals Court a copy of her letter would result in an order requiring Forte to proceed pro se. We think it was objectively reasonable for Hanson to believe that sending a copy of her letter to the Appeals Court did not violate Forte's constitutional rights.[9] Nor can we say that the Appeals Court's order was obviously unconstitutional in view of Forte's silence in the face of being required to proceed pro se. While a waiver may not be inferred from a silent record, on this record the defendants reasonably could have perceived Forte's silence as an election to proceed pro se.
 
 
 19
 Judgment affirmed.
 
 
 
 [1]
 We note that the government's brief (p. 14) mischaracterizes the Appeals Court's April 13, 1990 order as being one which reconsidered and affirmed its February 6, 1991 order requiring that Forte proceed pro se on appeal. Obviously an order issued in 1990 cannot reconsider an order issued in 1991
 
 
 [2]
 Forte appended a copy of this notice and the cover letter that accompanied it to his opposition to the defendants' motion to dismiss. We note that, contrary to the allegations in Forte's complaint, the notice assigned SJC case no. 90-469, Forte v. Hampden County Superior Court, to the CPCS, not Forte's criminal appeal (Commonwealth v. Forte, Mass. Appeals Court no. 89-P-1269)
 
 
 [3]
 Massachusetts G. L. c. 211D, § 1 established the CPCS "to plan, oversee, and coordinate the delivery of criminal ... legal services by all salaried public counsel, bar advocate and other assigned counsel programs, and private attorneys serving on a per case basis." Members of the CPCS are appointed and removed by the justices of the Massachusetts Supreme Judicial Court. State court justices assign cases to the CPCS upon determining that a defendant is indigent and eligible for appointed counsel. M.G.L. c. 211D, § 5. The statute requires the CPCS to "establish, supervise and maintain a system for the appointment or assignment of counsel at any stage of a proceeding" where Massachusetts law or the rules of the SJC require that person to be represented by counsel. Id. The CPCS maintains a public counsel division and a private counsel division. The public counsel division consists of a staff of attorneys employed by the CPCS who generally represent indigent defendants in all criminal cases but for five enumerated exceptions. See M.G.L. c. 211D, § 6(a). The private counsel division consists of private attorneys or groups of attorneys who contract with the CPCS to provide counsel to indigents. Generally, the private counsel division is assigned to cases that the public counsel division cannot handle. See M.G.L. c.211D, § 6(b). The CPCS is authorized to establish a rotating appointment mechanism for attorneys in its private counsel division. Id. § 4
 
 
 [4]
 The Supreme Judicial Court requires state court judges to secure an indigent defendant's signature on a waiver form before allowing the defendant to proceed pro se. The judge must also sign the waiver form to certify that the party has knowingly elected to proceed without counsel. If a defendant elects to proceed without counsel but refuses to sign the waiver form, the judge must note that on the form. See Rules of the Supreme Judicial Court, Rule 3:10 & Form 9. However, if a party has been found able to procure counsel and has not, after a reasonable time, either waived counsel or procured counsel, "then the case may be ordered to proceed." Id., Rule 3:10, § 4
 
 
 [5]
 As the Supreme Judicial Court's order related to another case we discount it and simply assume that the Appeals Court required the CPCS to appoint another attorney for Forte in allowing attorney Sheketoff to withdraw
 
 
 [6]
 Forte has not challenged the assertion in the January 28, 1991 letter that he discharged attorneys Sheketoff and Curtiss. We therefore assume that it is true. We note, however, that Forte apparently had second thoughts, and filed a motion in opposition to Sheketoff's motion to withdraw. This was treated as a motion for reconsideration and denied, allegedly on the condition that the CPCS provide Forte with another attorney
 
 
 [7]
 The CPCS is authorized to appoint and compensate private attorneys on a case-by-case basis pursuant to M.G.L. c. 211D, § 6(b)
 
 
 [8]
 In this regard, we reject Forte's contention that qualified immunity is not available to these defendants because their duty to appoint counsel for him was not discretionary. Under M. G. L. c. 211D, §§ 1 and 6(b), the CPCS had discretion to appoint and compensate private attorneys on a case by case basis. While M.G.L. c. 211D, § 14 required appeals to be assigned to the public counsel division unless a case presented a conflict of interest, section 6(b)(iii) gave Rosenfeld discretion to assign such cases to the private counsel division (and private attorneys hired through that division) as he determined to be necessary. We read the statute as a whole to confer on the chief counsel discretion to determine when specific cases require the assignment of outside counsel. "A law that fails to specify the precise action that ... [an] official must take in each instance creates only discretionary authority...." Davis v. Scherer, 468 U.S. 183, 197 n. 14 (1984). Such discretion renders the ministerial function exception to qualified immunity inapplicable
 
 
 [9]
 Forte has not alleged sufficient facts to warrant an inference that the Appeals Court's order was the product of a conspiracy. We decline to draw such an inference based on the facts that the order issued in apparent response to Hanson's letter. It is only when a "suggested inference rises to what experience indicates is an acceptable level of probability, that 'conclusions' become 'facts' for pleading purposes." Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). See also Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977), cert. denied, 434 U.S. 1077 (1978)(holding conclusory allegations of conspiracy insufficient)