Blackmer v. Warden, NHSP          CV-03-275-PB   12/09/04

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Paul Blackmer

         v.                              Civil No. 03-275-PB
                                         Opinion No. 2004 DNH 180
Warden, New Hampshire
State Prison


MEMORANDUM AND ORDER


On May 30, 2003, Paul Blackmer, appearing *pro se*, filed a

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254

(Doc. No. 3).[1]  In this petition Blackmer challenges his 1997

state court convictions for possession of a controlled substance

with intent to sell and conspiracy to possess a controlled

substance with intent to sell.  Respondent Jane Coplan, Warden of

---

[1]  A *pro se* prisoner's petition for a writ of habeas corpus
is considered filed "on the date it is deposited in the prison's
internal mail-system for forwarding to the district court."
Morales-Rivera v. United States, 184 F.3d 109, 109 (1st Cir.
1999); see Houston v. Lack, 487 U.S. 266, 276 (1988).  For the
purpose of this Memorandum and Order, I treat Blackmer's petition
as having been given to prison officials for filing, and
therefore having been filed, on May 30, 2003, the date that
appears on the petition, rather than on June 3, 2003, the date on
which it was stamped "filed" by this court's clerk.  See Adeline
v. Stinson, 206 F.3d 249, 251 n.1 (2d Cir. 2000).

the New Hampshire State Prison, has moved for summary judgment (Doc. No. 65), arguing that the petition is barred by the one-year statute of limitations that governs federal habeas corpus claims. See 28 U.S.C. § 2244(d)(1). Because I determine that Blackmer's claims are time-barred, I grant the Warden's motion.

## I. BACKGROUND[2]

### A. The Trial

The police arrested Blackmer in April 1994 after observing him retrieve two packages containing nearly fifty pounds of marijuana from a United Parcel Service ("UPS") office in Laconia. Blackmer, 149 N.H. at 48 (2003). A grand jury indicted Blackmer in June 1994 for possession of marijuana with the intent to sell and conspiracy to possess marijuana with the intent to sell. Id. A superseding indictment followed in October 1994, but the state *nol prossed* the indictments. Id. In May 1996, another grand jury reindicted Blackmer for possession of marijuana with intent to sell and conspiracy to possess marijuana with intent to sell,

---

[2] The facts of the case are taken in part from State v. Blackmer, 149 N.H. 47, 816 A.2d 1014 (2003). Additional details have been provided by consulting the submissions of the parties.

based on the 1994 UPS incident.[3]  Id.  On October 3, 1997, a Belknap County jury convicted Blackmer of these charges.  He was sentenced on December 23, 1997 to a prison term of not more than 30 years, nor less than 15 years.

## B.    The Direct Appeal

Blackmer's standby counsel filed a Notice of Appeal on his behalf in March 1998. (Ex. 2).[4]  Thereafter, on June 1, 1998, Blackmer, now acting *pro se*, filed a Motion to Amend Notice of Appeal Filed with Exception ("Motion to Amend"), and submitted 19 additional issues to the supreme court as part of his appeal. (Ex. 3).  On October 6, 1998, the supreme court ordered that it would treat Blackmer's June 1, 1998 Motion to Amend as an amended notice of appeal.

---

[3]  In May 1996, Blackmer was also indicted for conspiracy to possess marijuana with the intent to sell stemming from activities alleged to have occurred between December 1995 and January 1996.  Blackmer, 149 N.H. at 48.  This charge was severed from the charges at issue here.  Id.  Blackmer was then tried and convicted by a jury on this separate charge.  Id.  On January 10, 2003, the New Hampshire Supreme Court affirmed his conviction. Id. at 51.  Blackmer's current petition does not challenge this conviction.

[4]  All citations to "Ex." refer to the exhibits included in the Appendix to the Respondent's Memorandum of Law in Support of Her Motion for Summary Judgment, III.

At the heart of Blackmer's Motion to Amend, and indeed at the heart of each of his post-conviction pleadings, is his firm belief that his June 1994 indictment, and his subsequent conviction, resulted solely from what he claims was the perjured grand jury testimony of DEA Special Agent Michael Scott Connolly. In his submissions, Blackmer refers to Connolly's testimony as the "Brady material" issue. (Ex. 3, ¶¶ (2)g, (2)h, (4)). He remains resolute in his view that the State is required, under Brady v. Maryland, 373 U.S. 83 (1963) to disclose whether Connolly committed perjury before the grand jury. Blackmer also argues that in refusing to disclose the answer to this question, the State committed prosecutorial misconduct by suppressing potentially exculpatory evidence, thereby resulting in a malicious prosecution and a wrongful conviction. (Ex. 3). In effect, Blackmer maintains that he was unable to mount an adequate defense at trial and has been unable to appropriately appeal his conviction without a response from the State to his claim that Connolly committed perjury. (Ex. 4).

Prior to briefing, Blackmer filed a "Motion to Stay Appeal and Remand to Resolve Brady Material Answer Issue," again requesting an answer to his question regarding Connolly's grand

jury testimony.  (Ex. 16, at 4).  On July 11, 2000, the New Hampshire Supreme Court denied this motion.  (Ex. 17).  The supreme court also ordered Blackmer to file his appellate brief on or before August 27, 2000, without further continuance.[5]  (Ex. 17).  On August 10, 2000, Blackmer notified the supreme court that he did not intend to file a brief in support of his appeal.  (See Ex. 9).

Subsequently, on December 19, 2000 (clerk's notice dated December 27, 2000), the New Hampshire Supreme Court dismissed Blackmer's appeal for failure to file a brief pursuant to N.H. Sup. Ct. R. 16(12) ("Failure of the appealing party to file a brief shall constitute a waiver of the appeal . . . and the case shall be dismissed.").  (Ex. 9).  In response, on January 16, 2001, Blackmer filed a "Motion to Reconsider Dismissal of Appeal," again arguing that he was unable to properly prepare his appeal without an answer to the Brady material question.  (Ex.

---

[5]  This was the second briefing schedule in this case.  On June 18, 1999, the New Hampshire Supreme Court ordered Blackmer to file his appellate brief no later than August 2, 1999.  In response, Blackmer instructed his appointed appellate defender not to file a brief on his behalf, until the Brady material issue was resolved.  Then, on July 19, 1999, Blackmer filed a motion to remove his appellate defender.  Four days later the supreme court suspended briefing in the case.

10). Blackmer purportedly placed this motion in the prison mailbox on January 12, 2001.[6] (Pet'r Obj. to Res't Mot. for Summ. J. I, at 4, Doc. No. 57). The supreme court denied the motion on September 25, 2001 (clerk's notice dated September 26, 2001). (Ex. 11).

C. **The Motions for Injunctive Relief**

In August 2000, while his direct appeal was pending, Blackmer filed identical "Motion[s] for Injunctive Relief" in Coos County Superior Court and Merrimack County Superior Court. (Ex. 13 & Ex. 14). In these motions, which in effect operate as a collateral attack on his conviction, Blackmer lodged two complaints and prayed for relief on two fronts. First, he charged that the library at the Northern N.H. Correctional Facility was inadequate for his legal research, and therefore requested a transfer to the Concord facility. Second, he renewed his request that the court order the State to disclose the answer to his Brady material question. The motion filed in Coos County was dismissed on November 8, 2000, and the Motion filed in

_____

[6] Blackmer claims that he did not receive notice of the supreme court's dismissal of his appeal until January 3, 2001. (Pet'r Obj. to Res't Mot. for Summ. J. I, at 4, Doc. No. 57).

Merrimack County was denied on October 17, 2000.  Blackmer did not appeal from either ruling.

## D.    State Court Habeas Petition

Blackmer also filed a petition for a writ of habeas corpus in state superior court.  (Ex. 5).  In a November 3, 2000 order denying Blackmer's petition, the superior court concluded that after its review of all pleadings, materials, and other existing records relating to the claim, Blackmer would be unable to demonstrate the elements necessary to establish a denial of his rights under either the United States Constitution or the New Hampshire Constitution.  (Ex. 6).  The superior court further noted that the issues raised in Blackmer's petition should be raised in his direct appeal.  (Ex. 6).  Six days later, on November 9, 2000, Blackmer filed a motion in superior court asking the court to reconsider its order denying his habeas petition.  (Ex. 7).  This motion was denied on November 29, 2000. (Ex. 8).  Blackmer did not appeal from this ruling.

## E.    The Petition for Modification of Order and the Motion to Resubmit

On or about October 20, 2001, Blackmer filed a "Petition for Modification of Order" in Belknap County Superior Court,

-7-

requesting modification of a July 25, 1997 pre-trial Order. (Ex. 12). Blackmer again raised the Brady material issue in this motion but requested that the pre-trial Order be changed to read: "The State's [SECOND] Motion to Reconsider Order on Standing is DENIED." (Ex. 12). The superior court denied this motion on November 14, 2001. Almost 10 months later, on September 8, 2002, Blackmer filed a "Motion to Resubmit 'Petition for Modification of Order,'" pressing the court, yet again, to resolve the Brady material issue. (Ex. 18). The superior court denied that motion on October 1, 2002. (Ex. 20, at 1). Blackmer appealed the ruling to the New Hampshire Supreme Court in late October, 2002. On February 18, 2003, the supreme court declined to accept the appeal.

**F.    The Federal Habeas Petition**

Blackmer filed a petition for a writ of habeas corpus in this court on May 29, 2003. In August 2003, the Magistrate Judge reviewed Blackmer's petition pursuant to L.R. 4.3(2) and determined that it raised the following grounds for relief: (1) ineffective assistance of counsel at trial; (2) denial of counsel at trial; (3) illegal search and seizure; (4) denial of the right to present evidence at trial and on appeal; (5) prosecutorial

misconduct and suppression of exculpatory evidence; and (6) denial of meaningful access to the courts. (Doc. No. 7). The Magistrate Judge ordered Blackmer to provide the court with documentation demonstrating that he had exhausted his state remedies. Blackmer timely complied with that order. The Magistrate Judge thereafter dismissed Blackmer's claim that he had been denied access to the courts, (Doc. No. 12), and ordered the petition served on the respondent as to the five remaining claims. (Doc. No. 13).

## III. ANALYSIS

The Warden argues that Blackmer's federal habeas petition is barred by the one-year statute of limitations that governs habeas petitions. The Warden's position is that the statute began to run on April 9, 2001, 90 days after she claims that Blackmer's conviction became final in state court. She further argues that none of Blackmer's applications for post-conviction or other collateral review tolled the limitations period. Therefore, she asserts that his May 23, 2003 federal habeas petition is time-barred because it was filed long after the limitations period had run.

Blackmer advances two main arguments in his objection to the Warden's motion. First, he asserts that the limitations period has not yet begun to run because the Warden has failed to provide him with information that he needs to file an effective petition. Blackmer's second argument is that his federal habeas petition is timely because the limitations period should have been tolled while his petition for modification of order and his motion to resubmit were pending. I begin by providing a summary of the applicable law and then analyze each of Blackmer's arguments in turn.

## A.    **The Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a one-year statute of limitations for federal review of state prisoners' habeas applications. See 28 U.S.C. § 2244(d)(1). Section (d)(1) provides that the one-year limitations period shall run from the latest of--

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

> (C)   the date on which the constitutional right
>       asserted was initially recognized by the
>       Supreme Court, if the right has been newly
>       recognized by the Supreme Court and made
>       retroactively applicable to cases on
>       collateral review; or
> (D)   the date on which the factual predicate of
>       the claim or claims presented could have been
>       discovered through the exercise of due
>       diligence.

28 U.S.C. § 2244(d)(1).

The AEDPA also includes a provision that tolls the limitations period for that period of time "during which a properly filed application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  An application that is not "properly filed," however, cannot toll the limitations period.  The United States Supreme Court has held that an application for state post-conviction or other collateral review is "properly filed" within the meaning of section 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.  These [rules] usually prescribe . . . the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee."  Artuz v. Bennett, 531

-11-

U.S. 4, 8 (2000). A state post-conviction proceeding is considered "pending" from the time "it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." Adeline, 206 F.3d at 252 (quoting Bennett v. Artuz, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, Artuz v. Bennett, 531 U.S. 4 (2000)).

Finally, although the statutory tolling provision can stop the limitations clock from running, this "provision does not . . . 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." Vroman v. Brigano, 346 F.3d 598, 602 (6th Cir. 2003) (quoting Rashid v. Khulman, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)). Thus, once the limitations period has expired, collateral petitions for state review can no longer serve to avoid the statute of limitations. See id.

B. **Analysis**

1. Accrual

The New Hampshire Supreme Court dismissed Blackmer's direct appeal for failure to file an appellate brief on December 19, 2000. The clerk's notice of the decision is dated December 27,

-12-

2000, and under New Hampshire law, this date is controlling. See, e.g. N.H. Sup. Ct. R. 7; N.H. Super. Ct. R. 59-A(1). Blackmer then had 10 days, until January 8, 2001, to file a motion for rehearing or reconsideration. See N.H. Sup. Ct. R. 22(2) (establishing deadlines for rehearing and reconsideration motions) and N.H. Sup. Ct. R. 27 (establishing time computation rules). Thus, as the Warden correctly notes, Blackmer's conviction became final in state court the following day, January 9, 2001. From January 9, 2001, Blackmer then had 90 days within which he could have sought a writ of *certiorari* from the United States Supreme Court. See Donovan, 276 F.3d at 91. That he chose not to seek such review has no bearing on the determination of when his conviction became final. Id. Accordingly, his conviction became final under Section 2241(d)(1)(D) on April 9, 2001. [7]

---

[7] Blackmer contends that his conviction in state court did not become final until September 25, 2001, when the New Hampshire Supreme Court denied his motion to reconsider dismissal of his appeal. I reject this contention because his motion to reconsider was not timely filed. See N.H. Sup. Ct. R. 22(2) (requiring that a motion to reconsider be filed within 10 days of the date of the opinion). I decline to discuss this particular dispute in greater detail because it has no effect on my conclusion that Blackmer's petition is time-barred.

Blackmer nevertheless invokes Section 2241(d)(1)(D) in arguing that the limitations period has not yet begun to run because the state prevented him from discovering the factual predicate for his claim.[8]  His argument is that his claim is predicated on Special Agent Connolly's perjury and, since the state has failed to admit that the perjury occurred, it has deprived him of information that he needs to bring his claim.  This argument is meritless.  The limitations period begins to run under Section 2244(d)(1)(D) when a defendant discovers or

---

[8]  Blackmer also alleges that the New Hampshire courts have "squandered" jurisdiction in this matter and are therefore unfit to conduct a review of his case.  This argument is rooted in his contention that he was denied the assistance of counsel during his direct appeal.  Blackmer is incorrect.  Prior to January 1, 2004, when N.H. Sup. Ct. R. 7 was amended to provide for mandatory appeals in certain circumstances, the right to appeal in New Hampshire was "limited to the right to obtain a discretionary determination by [the Supreme Court] as to whether it will accept the appeal."  State v. Cooper, 127 N.H. 119, 124 (1985).  Pursuant to this rule, indigent defendants are provided counsel for preparing appeals to the Supreme Court at the State's expense.  N.H. Rev. Stat. Ann. § 604-A:1.  In this case, the State appointed an appellate defender to assist Blackmer in preparing his notice of appeal and his appellate brief.  Prior to filing the brief, however, Blackmer instructed his attorney not to file the brief and then, on his own initiative, filed a motion to have his attorney removed.  See note 7, *supra*.  Accordingly, Blackmer's claim that the State has denied him the assistance of counsel in preparing his appeal is unsupported by the record and therefore rings hollow.

reasonably should have discovered the factual predicate for his claim. It does not require that the defendant have received an admission from the state that a claim has merit before the statute begins to run. It is obvious from the record that Blackmer was well aware of the factual basis for his claim of perjury when his direct appeal was pending before the New Hampshire Supreme Court. Section 2241(d)(1)(D) thus will not save Blackmer's claim from being subject to the statute of limitations.

Because § 2244(d)(1)(D) is inapplicable, the statute of limitations accrued on April 9, 2001 when Blackmer's conviction became final under § 2244(d)(1)(A).

2. Tolling

Blackmer also argues that the statute of limitations was tolled during the periods in which his petition for modification of order and his motion to resubmit were pending in state court.[9] As I have explained, such applications for post-conviction relief

---

[9] Although Blackmer argues otherwise, the motions for injunctive relief and the state court habeas corpus petition do not toll the statute of limitations because these matters were resolved before the statute of limitations began to run.

-15-

do not toll the statute of limitations unless they are "properly filed."

Unfortunately for Blackmer, the Warden is correct in her claim that neither his petition for modification of order nor his petition to resubmit were "properly filed" for purposes of tolling the limitations period. First, the "Petition for Modification of Order" that Blackmer filed in superior court on or about October 20, 2001 requested modification of a July 25, 1997 pre-trial order. In essence, this was a motion for reconsideration. Pursuant to N.H. Super. Ct. R. 59-A, such motions must be filed "within ten (10) days of the date on the clerk's written notice of the order or decision." Id. at 59-A(1). Here, Blackmer filed the motion more than four years after the clerk's notice. Because this motion was not "properly filed" pursuant to New Hampshire's procedural rules, it did not toll the applicable limitations period.

The Warden also correctly argues that the September 8, 2002 motion to resubmit was not "properly filed" according to New Hampshire's procedural rules, and therefore did not toll the limitations period. This motion was a response to the superior

court's November 14, 2001 denial of Blackmer's petition for modification of order. Thus, it was a motion to reconsider which, as I have explained, had to be filed within 10 days of the clerk's written notice of the decision that Blackmer was asking the court to reconsider. Blackmer's September 8, 2002 motion, filed nearly 10 months after the clerk's notice of the order on the original motion was therefore untimely. Thus, the motion was not "properly filed" for tolling purposes.

## V.   CONCLUSION

Because I conclude that Blackmer's petition for a writ of habeas corpus (Doc. No. 3) is time-barred, the Warden's Motion for Summary Judgment III (Doc. No. 65) is granted. As a result, the Warden's Motion for Summary Judgment I (Doc. No. 31) and Motion for Summary Judgment II (Doc. No. 51) are moot. The Clerk shall enter judgment accordingly.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

December 9, 2004

-17-

cc:  Paul Blackmer 26106, *pro se*
     Charles J. Keefe, Esq.