**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1606
_____

DOMINIC JOSEPH ABBOTT,
                                             Appellant

v.

WARDEN RICHARD GIGLIOTTI;
DISTRICT ATTORNEY OF BUTLER COUNTY
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 08-cv-01310)
District Judge:  Honorable Amy Reynolds Hay
_____

Submitted Under Third Circuit LAR 34.1(a)
December 5, 2011
_____

Before: HARDIMAN, BARRY and VAN ANTWERPEN, Circuit Judges

(Opinion Filed: January 10, 2012)
_____

OPINION
_____

BARRY, Circuit Judge

       Dominic Joseph Abbott appeals the District Court's denial of his petition for

habeas relief.  We will affirm.

## I.

Because we write for the parties, who are well acquainted with the case, we recite only the essential facts and procedural history.

## A.

Abbott was arrested after hitting his pregnant girlfriend several times, fracturing her jaw in three places. He was charged with aggravated assault, simple assault, recklessly endangering another person, harassment, and disorderly conduct. He discharged both of the attorneys that had been appointed to represent him, and decided to represent himself at trial. After a hearing, the Court of Common Pleas of Butler County allowed him to proceed *pro se* and appointed standby counsel.[1] On August 20, 2004, a jury convicted him of one count each of aggravated assault and simple assault. That day, Abbott sought help with filing an appeal from his standby counsel, who informed him that he would have to wait until after sentencing.

On November 17, 2004, the trial court sentenced Abbott to 84 to 200 months' imprisonment. Before sentencing, Abbott received a document entitled "Defendant's Rights at Sentencing," which described the applicable post-sentence and appeal rights under Pennsylvania law, and explained how to exercise those rights. He signed the document on the day of sentencing.

---

[1] A doctor examined Abbott prior to trial and concluded that he was competent to stand trial. Based on his report, the post conviction court later concluded that Abbott had been competent to waive his right to counsel and represent himself.

2

Abbott did not, however, file a post-sentence motion or notice of appeal. Rather, on November 24, 2004, he filed a petition under the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541-46, requesting the appointment of counsel. His cover letter referred to the filing as an "appeal." The trial court denied the petition without prejudice, noting that the deadline to file a direct appeal had not yet passed. On December 6, 2004, Abbott filed another PCRA petition, citing the rule that governs the time to appeal if a post-sentence motion is filed. The trial court did not rule on this petition. On December 10, 2004—still within the appeals deadline—Abbott filed a motion in the Superior Court asking the court to appoint counsel and telling it that his appeal was pending. The court denied the motion, noting that there was no appeal docketed.

In February 2005, Abbott filed a "Motion to Reinstate Appeal Rights" in the Superior Court, stating that he had filed a *pro se* notice of appeal on November 24, 2004, and that his trial counsel had "declined to file an appeal." The court denied the motion without prejudice to seeking relief in the trial court, and noting that a notice of appeal was never docketed.

That April, Abbott filed a PCRA petition with the Supreme Court of Pennsylvania, which forwarded it to the Butler County Clerk of Courts. The petition was returned as procedurally defective. Abbott then filed a PCRA petition in the Butler County Court of Common Pleas, and the court appointed counsel. On October 21, 2005, counsel filed an

amended PCRA petition, which included allegations that the prosecution failed to disclose exculpatory evidence; that the court should not have allowed Abbott to waive his right to counsel at trial without a full evaluation of his competency; and that he was denied his right to a direct appeal.

Significant delays followed, largely caused by Abbott's insistence on making procedurally defective "*pro se*" filings despite being represented by counsel. On December 20, 2006, after a hearing, the PCRA court denied post conviction relief. In a supplemental opinion, the PCRA court recited the procedural history of Abbott's filings and concluded that it could only address the issues raised in the PCRA petition. It then determined that Abbott waived the failure to disclose evidence claim by failing to raise it on direct appeal and that he would have lost on the merits in any event because the prosecution in fact provided the information that was the subject of the claim prior to trial.

On February 2, 2007, Abbott's counsel moved to withdraw because Abbott wanted to proceed *pro se* and, in effect, was already doing so, albeit without informing counsel. The PCRA court granted counsel's motion and appointed standby counsel. On January 3, 2008, the Superior Court affirmed the denial of post conviction relief, concluding that "the PCRA court's opinion . . . provides an apt and accurate assessment of the situation with regard to Appellant's direct appeal rights." It then determined that Abbott waived his substantive claims by failing to raise them on direct appeal.

4

B.

On September 19, 2008, Abbott filed a petition for habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Western District of Pennsylvania. His petition is best construed as seeking relief under *Brady v. Maryland*, 373 U.S. 83 (1963), based on the allegedly undisclosed exculpatory evidence, and, although very difficult to discern, under the Due Process Clause of the Fourteenth Amendment, based on the alleged deprivation of his right to appeal.

The District Court denied the petition, reasoning that Abbott's *Brady* claim was procedurally defaulted and that even if his petition had included a claim of the deprivation of his right to appeal, such a claim would fail on the merits because (1) claims based on error during the course of PCRA proceedings are not properly brought in a habeas petition, and (2) Abbott "has not argued, [l]et alone established[,] that the Superior Court's disposition was contrary to or an unreasonable application of" Supreme Court precedent. On October 6, 2010, we granted a certificate of appealability on Abbott's due process claim.

II.

The District Court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253.

Our review of the District Court's decision is plenary. *Lewis v. Johnson*, 359 F.3d 646, 651-52 (3d Cir. 2004). Because the PCRA court considered Abbott's claim on the

5

merits and determined that he was not denied his right to a direct appeal, habeas relief may be granted only if the state court adjudication of this claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Abbott asserts that his due process right to a direct appeal was violated when the state court failed to convert his defective PCRA petitions into notices of appeal, appoint counsel, or take other measures to enable him to appeal. He argues that the court "knew or should have known that [Abbott] did not know what he was doing." Appellant's Br. at 16.

In *Douglas v. California*, the Supreme Court held that, when the right to a direct appeal is conferred by state law, the Due Process Clause guarantees the right to counsel on appeal. 372 U.S. 353, 357 (1963). It goes without saying, of course, that counsel must be effective. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). While *Evitts* observed that "[a]n unrepresented appellant—like an unrepresented defendant at trial—is unable to protect the vital interests at stake," it did not address the issue before us, i.e., where an "unrepresented appellant" has knowingly and voluntarily waived counsel. *Id.* at 396.

There was no violation of Abbott's due process rights, and the PCRA court's conclusion in that regard was surely not contrary to or an unreasonable application of law. As an initial matter, Abbott consistently demonstrated his desire to represent himself.

6

During the brief intervals when he was represented, he impeded his appointed attorneys' efforts by making *pro se* filings, in the process often accusing the attorneys of ineffective assistance.[2] Moreover, although he requested counsel in his first untimely PCRA petition, there is no indication that he ever sought the help of standby trial counsel—or did anything himself—after being advised that an appeal can only be filed after sentencing.

Moreover, at sentencing, Abbott signed a document that informed him of his right to an appeal and how to perfect that right. The trial court also discussed the deadline for moving to modify the sentence and asked whether Abbott had any other questions, to which he replied that he did not. When Abbott was later told that the deadline for a direct appeal had not yet passed, he ignored these clear indications that his premature attempts to appeal had been unsuccessful. Under Pennsylvania law, *pro se* defendants are subject to the same rules of procedure as represented defendants. *Commonwealth v. Williams*, 896 A.2d 523, 574 (Pa. 2006). While courts are "willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant." *In re Ullman*, 995 A.2d 1207, 1211-12 (Pa. Super. Ct. 2010).

Abbott's reliance on *Evitts* and *Douglas* is unpersuasive. Neither case clearly requires a court to take any particular steps to ensure that appellate counsel is effective, and neither case requires a court to bend its procedural requirements after a competent litigant has waived his right to counsel. Accordingly, the PCRA court reasonably

---

[2] We do not even pretend to list all of the numerous filings with which Abbott has graced the various state courts.

7

concluded that Abbott's due process rights, as determined by the Supreme Court, were not violated.

III.

For the foregoing reasons, we will affirm the order of the District Court.