# Illinois Official Reports

## Appellate Court

---

### *People v. Stockton*, 2018 IL App (2d) 160353

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KATIE LIN STOCKTON, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0353 |
| Filed | July 20, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 09-CF-2414; the Hon. John R. Truitt, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Miriam Sierig, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Joseph P. Bruscato, State's Attorney, of Rockford (Patrick Delfino, David J. Robinson, and Steven A. Rodgers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.<br>Justices Zenoff and Jorgensen concurred in the judgment and opinion. |

¶ 1        Defendant, Katie Lin Stockton, appeals from an order of the circuit court of Winnebago County summarily dismissing her petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) seeking relief from her conviction of first degree murder (720 ILCS 5/9-1(a)(2) (West 2004)). We affirm.

¶ 2        The victim of defendant's crime was her newborn daughter. Defendant entered a nonnegotiated guilty plea and was sentenced to a 50-year prison term. The body of defendant's daughter was discovered in December 2004 on property owned by defendant's mother and stepfather. The child, who had been born alive, was wrapped in clothing and had been placed in a plastic bag. Either hypothermia or suffocation from the clothing or plastic had caused the child's death. Evidence at defendant's sentencing hearing established that she was questioned by police and that she denied that the child was hers. It was not until 2009 that police obtained a DNA sample from defendant showing that she was the child's mother. DNA testing showed that John Craig was the father. In the course of the investigation, police discovered the decomposed remains of two infants in bags in the trunk of defendant's car. Genetic testing established that defendant was the mother of the two infants and that Craig was the father of one of them. Both were full term at birth, but it could not be determined whether they were born alive. Several witnesses testified that the bags in which the infants were found contained liquid from decomposition, as well as maggots and insects.

¶ 3        Winnebago County Coroner Elizabeth Fiduccia testified that she and the sheriff of Winnebago County gave the child found in 2004 the name Crystal. She explained that the child was found near Christmas on a crystal-clear night. They took the child's handprints and footprints so that, when the child's family was identified, they would have "something to hold onto because they knew this child was real and it would make it more real if they saw it." Craig testified that defendant told him that she was carrying his child. She later told him that she had a miscarriage. When Craig learned that the child had been born alive, he named her Mariah Renee.

¶ 4        The State presented numerous photographs of (1) the child at the site where her body was discovered in 2004, (2) the child's autopsy, (3) the child in an open casket with stuffed animals, (4) the child's headstone, and (5) the decomposed remains of the infants later found in the trunk of defendant's car. The State introduced evidence that there were places such as hospitals, police stations, and fire stations where defendant could have left a newborn without fear of punishment.

¶ 5        According to the presentence investigation report, defendant had been convicted of forgery in 2008 and was sentenced to probation. In addition, the State presented evidence that defendant had been dismissed from a job due to suspicion that she was stealing money from her employer.

¶ 6        Defendant's mother, Lisa Landsee, testified for defendant. According to Landsee, defendant had a son when she was in her early twenties. In 2004 or 2005, Landsee suspected that defendant was abusing drugs and alcohol. In 2008, defendant was incarcerated. After her release, defendant lived with Landsee. Defendant helped around the house, took care of her son, and had three jobs. In her statement in allocution, defendant apologized for what she had done and asked for forgiveness.

¶ 7    In imposing sentence, the trial court noted that there was no evidence that the children whose remains were found in the trunk of defendant's car had been born alive. Accordingly, the court stated that it would not consider the remains as evidence of an uncharged crime. However, the court indicated that concealing the remains in her car was arguably the act of a "deranged individual." As noted, the court sentenced defendant to a 50-year prison term.

¶ 8    Defendant moved to reconsider her sentence. The trial court denied the motion, and defendant appealed. Because trial counsel failed to properly comply with Illinois Supreme Court Rule 604(d) (eff. Feb. 6, 2013), we remanded for proceedings in compliance with that rule. On remand, the trial court again denied defendant's motion to reconsider her sentence. On appeal, defendant's attorney moved to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *People v. Jones*, 38 Ill. 2d 384 (1967). We granted the motion and affirmed the trial court's judgment, noting that "there is no indication that, in any respect, the trial court erred in what it did or did not consider" at sentencing. *People v. Stockton*, No. 2-14-1259 (2015) (unpublished summary order under Illinois Supreme Court Rule 23(c)). Defendant subsequently filed the *pro se* postconviction petition giving rise to this appeal.

¶ 9    We begin our analysis with a brief summary of the general principles governing proceedings under the Act. In *People v. Meeks*, 2016 IL App (2d) 140509, ¶ 3, we observed as follows:

> "Under the Act, a person imprisoned for a crime may mount a collateral attack on his conviction and sentence based on violations of his constitutional rights. [Citation.] Within 90 days after a petition for relief under the Act is filed and docketed, the trial court must examine the petition and either summarily dismiss it or docket it for further proceedings. [Citation.] If the trial court finds that the petition is 'frivolous or is patently without merit,' the petition will be summarily dismissed. [Citation.] Summary dismissal is proper if the petition 'is based on an indisputably meritless legal theory or a fanciful factual allegation.' [Citation.]"

Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is forfeited. 725 ILCS 5/122-3 (West 2016). We review a summary dismissal *de novo*. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009).

¶ 10   Defendant's *pro se* petition ostensibly raised three claims, the second of which was as follows:

> "PETITIONER'S 6TH AMENDENDMENT [*sic*] RIGHT TO THE UNITED STATE[S] CONSTITUTION WHICH GUARANTEES A FAIR AND IMPARTIAL TRIAL WAS VIOLATED. TO WIT:
>
> 1. The Trial Judge erred in allowing the State's Attorney to introduce evidence in that had nothing to do with the case at hand.
>
>     * The Trial Judge allowed evidence that was illegally obtained from a search of the defendant's vehicle while it was in impound for an unrelated charge. There was no warrant and no probable cause to search the vehicle either time it was in impound.
>
>     * The Trial Judge allowed the State's Attorney to put a person on the witness stand to testify against defendant claiming that he was the father of one of the infants found in the trunk of defendant's vehicle.

* There was no way to determine if a crime even happened when the skeletal remains were found, and it was never explained how the State knew how this man was father to the infant.

2. The Trial Judge erred un [*sic*] taking into consideration evidence in this case where the defendant was never connected to an actual crime.

* The Trial Judge considered the two bags with skeletal remains to be used as a 'character witness' as to the defendant's guilt in the case at hand.

* The remains have never been linked to a crime or that the defendant committed a crime.

* The Trial Judge should never have allowed the remains or the alleged father into evidence against defendant.

3. The Trial Judge made 'off colored' remarks about the defendant before he handed down his sentence.

* Trial Judge allowed his emotions to get involved when he sentenced defendant and by considering the evidence that never should have been allowed."

¶ 11    Defendant contends that the constitutional theory underlying this claim was that she did not receive the effective assistance of counsel on direct appeal. Defendant argues that a considerable amount of irrelevant and inflammatory evidence was erroneously admitted at sentencing, depriving her of a fair sentencing hearing. According to defendant, although trial counsel carefully preserved the errors for appeal, appellate counsel failed to raise them, thereby failing to provide effective assistance.

¶ 12    Although defendant did not use the words "ineffective assistance of appellate counsel" or equivalent language in her *pro se* petition, she contends that, at the first stage of the proceedings, the reference to the sixth amendment was sufficient. According to defendant, she "placed her claim under the umbrella of the Sixth Amendment." Defendant further argues that "because of the Sixth Amendment's direct association with the right to the effective assistance of counsel, when [defendant] wrote that she was denied her right to a fair and impartial trial *under the Sixth Amendment*, she sufficiently framed her allegation as a claim of ineffective assistance of counsel." (Emphasis in original.)

¶ 13    In her reply brief, defendant acknowledges that her petition did not say "whether she invoke[d] her right to [the] effective assistance of trial counsel or appellate counsel." She notes, however, that her petition asked for review of "an issue that trial counsel vigorously litigated and diligently preserved for review." According to defendant, because appellate counsel did nothing on appeal, "[i]t is *** a reasonable conclusion that [defendant] referred to appellate counsel's performance when invoking the Sixth Amendment." Defendant maintains that, in view of these circumstances, reading the petition as stating a claim of ineffective assistance of appellate counsel gives meaning to "all words and concepts used by [defendant]."

¶ 14    Defendant's argument is unpersuasive. As discussed below, the sixth amendment guarantees the right to the effective assistance of *trial* counsel, not appellate counsel. Thus, contrary to defendant's argument, a claim of ineffective assistance of appellate counsel is not under the "umbrella" of the sixth amendment, and reading the petition to state such a claim does not give meaning to the petition's reference to the sixth amendment.

¶ 15 The sixth amendment provides, "*In all criminal prosecutions*, the accused shall enjoy the right to a speedy and public trial, by an impartial jury *** and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." (Emphasis added.) U.S. Const., amend. VI. "Once started, the Sixth Amendment's 'criminal prosecution' continues through to the end of the basic trial stage, including sentencing." 3 Wayne R. LaFave, Jerold H. Israel, Nancy J. King, & Orin S. Kerr, Criminal Procedure § 11.2(b), at 710-11 (4th ed. 2015). Thus, "the 'criminal prosecution' has ended where the defendant is pursuing an appeal from his conviction." *Id.* at 711. Although there is a right to the effective assistance of counsel in a criminal defendant's first appeal as of right, that right to counsel arises from the fourteenth amendment. See *Douglas v. California*, 372 U.S. 353, 357-58 (1963) ("There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent *** is forced to shift for himself."); see also *Evitts v. Lucey*, 469 U.S. 387, 396 (1985) ("A first appeal as of right *** is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney.").

¶ 16 In view of the foregoing, we conclude that, although a petition must be "given a liberal construction" (*Hodges*, 234 Ill. 2d at 21), the reference in defendant's petition to the sixth amendment did not transform her claim into one of ineffective assistance of appellate counsel.[1] Because defendant's petition did not raise a claim of ineffective assistance of appellate counsel, the claim is forfeited. 725 ILCS 5/122-3 (West 2016).

¶ 17 For the foregoing reasons, we affirm the judgment of the circuit court of Winnebago County. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 18 Affirmed.

---

[1]We do *not* hold that, if a claim of ineffective assistance of appellate counsel is adequately raised, merely referring to the sixth amendment would invalidate the claim. However, a sixth-amendment claim that does not contain any reference to appellate counsel is insufficient to raise a claim of ineffective assistance of appellate counsel.