# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 25, 2019        Decided May 29, 2020

No. 18-5350

DUANE JOSEPH JOHNSON,
APPELLANT

v.

E. D. WILSON, WARDEN,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-00178)

*Amanda J. Sterling* argued the cause for appellant. On the briefs were *Alex Young K. Oh* and *Michelle Parikh*.

*Sharon A. Sprague*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jessie K. Liu*, U.S. Attorney, and *Elizabeth Trosman* and *Chrisellen R. Kolb*, Assistant U.S. Attorneys. *Lauren R. Bates* and *R. Craig Lawrence*, Assistant U.S. Attorneys, entered appearances.

Before: MILLETT and KATSAS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

2

KATSAS, *Circuit Judge*:  In this federal habeas action, Duane Johnson contends that he received ineffective assistance of counsel during the direct appeal of his murder conviction in D.C. Superior Court.  Among other things, Johnson argues that his appellate counsel labored under two conflicts of interest and failed to argue that the government withheld exculpatory evidence.  We reject all of Johnson's contentions.

I

A

Around 4 a.m. on April 26, 1994, Keith Nash was shot twice and killed.  His sister, Sharon Nash, was shot once but survived.  Duane Johnson, who was then in a parked car with the Nashes and three other people, was charged with murder and other offenses in the Superior Court of the District of Columbia.  At trial, the prosecution and the defense told conflicting stories about Johnson's role in the shootings.

According to the prosecution, Johnson shot the Nashes as part of an attempted robbery.  That evening, Keith, Sharon, Victor Williams, and LaTina Gary piled into Keith's sedan and went out looking for cocaine.  The group tried to buy from Johnson, who had previously supplied Williams, but his price was too high.  Johnson, who was with Damitra Rowel, nonetheless asked for a ride.  Keith agreed, and the pair crammed into the back seat of his car.  At that time, Keith was driving, Sharon was seated in the front passenger seat, and the four others were in the back seat, with Johnson at the far left and Williams at the far right.  When they reached an alley, Johnson ordered Keith to shut off the engine, put a gun to his head, and demanded money.  When Keith refused, Johnson fired three shots, hitting Keith twice in the neck and Sharon once in her left side.  Johnson and Rowel ran away.  Williams

grabbed Keith's gun and fired shots after Johnson. Then Williams and Gary called 911 to report the shootings.

In Johnson's rendition, Keith and Sharon were shot accidentally as Johnson resisted Williams's attempt to rob him. Williams asked Johnson to get in the car to go make a drug sale to nearby buyers. Skeptical, the unarmed Johnson asked Rowel to come with him. Keith drove to the alley and turned off the engine. Then Williams pulled a gun on Johnson and tried to rob him. Johnson tussled with Williams, whose gun went off several times. Johnson and Rowel escaped from the car and ran away, with Williams firing after Johnson.

The jury believed the prosecution. It found Johnson guilty of first-degree felony murder while armed, second-degree murder while armed, and various lesser charges. The Superior Court sentenced Johnson to 51 years to life in prison.

At trial and on direct appeal, Johnson was represented by appointed counsel Frederick Sullivan. On appeal, Sullivan argued that the evidence was insufficient to convict Johnson and that the Superior Court had erred by not instructing the jury on manslaughter. The D.C. Court of Appeals rejected both arguments but remanded for vacatur of the duplicative counts of conviction. On remand, the Superior Court resentenced Johnson to 46 years to life in prison.

B

Since his resentencing, Johnson has raised various collateral attacks on his conviction. Convictions in the D.C. Superior Court are subject to a unique regime of collateral review. A prisoner in custody under a Superior Court sentence "may move the court to vacate, set aside, or correct the sentence." D.C. Code § 23-110(a). To the extent this remedy is available, it is exclusive. *See id.* § 23-110(g). Thus, federal

courts cannot consider habeas petitions filed by prisoners who have adequate and effective section 23-110 remedies available to them. *See Blair-Bey v. Quick*, 151 F.3d 1036, 1042 (D.C. Cir. 1998). From 1998 to 2006, Johnson filed four section 23-110 motions, variously alleging ineffective assistance of counsel and violations of *Brady v. Maryland*, 373 U.S. 83 (1963). His first three motions were denied or withdrawn.

In 2007, Johnson discovered that Sullivan, between 1985 and 1987, had represented Williams on charges of first-degree burglary and armed robbery. Williams had testified for the prosecution at Johnson's trial. Johnson moved to amend his fourth section 23-110 motion to allege that Sullivan had provided ineffective assistance at trial while laboring under a conflict of interest from his prior representation of Williams. Johnson also sought to raise a claim that Sullivan had provided ineffective assistance in his direct appeal while laboring under the same conflict. In the D.C. court system, a prisoner can raise claims for ineffective assistance of appellate counsel only through a motion to the D.C. Court of Appeals to recall its mandate, not through a motion to the Superior Court under section 23-110. *See Watson v. United States*, 536 A.2d 1056, 1060 (D.C. 1987) (en banc). Johnson claimed ineffective assistance of appellate counsel in a motion to recall the Court of Appeals' mandate. The Court of Appeals denied the motion without prejudice to the Superior Court's consideration of conflict issues in the pending section 23-110 motion.

In 2008, the D.C. Superior Court rejected Johnson's claims of ineffective trial counsel and *Brady* violations. Johnson appealed. He also filed another motion to recall the D.C. Court of Appeals' mandate. The Court of Appeals denied the motion on the ground that the conflict issue was already before it in the appeal from the Superior Court's decision. A few months later,

the Court of Appeals affirmed that decision but did not mention Johnson's claim of ineffective assistance of appellate counsel.

In 2010, Johnson filed a federal habeas action under 28 U.S.C. § 2254. The district court held that D.C. Code § 23-110(g) barred review of all claims other than ineffective assistance of appellate counsel. It further held that Johnson was barred from claiming ineffective assistance of appellate counsel because he had neither moved to recall the mandate nor claimed that doing so would have failed to protect his rights. *Johnson v. Stansberry*, No. 10-cv-178, 2010 WL 358521 (D.D.C. Jan. 29, 2010). We reversed that determination because Johnson had, in fact, moved to recall the mandate. *Johnson v. Stansberry*, No. 10-5346 (D.C. Cir. May 11, 2011). After further skirmishing, *Johnson v. Stansberry*, No. 10-cv-178 (D.D.C. June 30, 2011); *Johnson v. Wilson*, No. 10-5346 (D.C. Cir. Jan. 2, 2013), the district court referred to a magistrate judge the claim that Johnson's appellate counsel had been ineffective.

At an evidentiary hearing, the magistrate judge heard testimony from both Johnson and Sullivan. The magistrate judge credited Sullivan's testimony that, when Sullivan represented Johnson, he had forgotten his prior representation of Williams. The magistrate judge concluded that Sullivan had not been ineffective in the appeal, and he recommended rejecting Johnson's claim. The district court adopted the recommendation, denied the habeas petition, and issued a certificate of appealability. *Johnson v. Wilson*, No. 10-cv-178, 2018 WL 5297811 (D.D.C. Oct. 25, 2018); Minute Order, *Johnson v. Wilson*, No. 10-cv-178 (D.D.C. Dec. 4, 2018).

In 2020, while this appeal was pending, Johnson moved in Superior Court for a reduction of his sentence under D.C. Code § 24-403.03, which applies to certain sentences for crimes

committed by minors.  The Superior Court granted Johnson's motion and ordered him released from custody.  *United States v. Johnson*, No. 1994 FEL 004696 (D.C. Super. Ct. Feb. 7, 2020).  Because Johnson remains on probation and subject to registration requirements because of his conviction, this appeal is not moot.  *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

## II

### A

Under 28 U.S.C. § 2254(a), a person in custody under the judgment of a D.C. court may petition for a writ of habeas corpus on the ground that he is being held "in violation of the Constitution or laws or treaties of the United States."  *Id.*; *see Waters v. Lockett*, 896 F.3d 559, 566 (D.C. Cir. 2018).  Johnson's petition alleges that he was held in violation of his Sixth Amendment right to the effective assistance of appellate counsel.

Johnson raises two theories.  First, under *Cuyler v. Sullivan*, 446 U.S. 335 (1980), he contends that Sullivan's performance on appeal was adversely affected by two conflicts of interest.  Second, under *Strickland v. Washington*, 466 U.S. 668 (1984), Johnson argues that Sullivan was ineffective on appeal based on his failure to raise *Brady* claims and his failure to argue that he had been ineffective at trial.

In habeas appeals, we review the district court's legal determinations de novo and its factual findings for clear error.  *See Waters*, 896 F.3d at 566.  It is unclear whether the Superior Court or the D.C. Court of Appeals resolved the claims before us on the merits, which would trigger deferential review of their decisions.  *See* 28 U.S.C. § 2254(d).  We may assume that

this rule of deference does not apply here, because Johnson's claims fail even without it.

B

We begin with Johnson's *Cuyler* claims. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defence." It encompasses the right to "effective assistance of counsel," *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970), both at trial and in a first direct appeal as of right, *see Evitts v. Lucey*, 469 U.S. 387, 396 (1985).

In general, a defendant claiming ineffective assistance must prove both that his lawyer performed deficiently and that he suffered prejudice as a result. *Strickland*, 466 U.S. at 687. But when a defendant establishes that his counsel was burdened with an "actual conflict" of interest, prejudice is presumed, *United States v. Gantt*, 140 F.3d 249, 254 (D.C. Cir. 1998), and the defendant need only show that the conflict "adversely affected his lawyer's performance," *Cuyler*, 446 U.S. at 348. An "actual conflict" means that the attorney "actively represented conflicting interests." *Id.* at 350. If the attorney does not know about the conflict of interest, there can be no actual conflict. *See United States v. McGill*, 815 F.3d 846, 943 (D.C. Cir. 2016) (per curiam).

Johnson argues that two different conflicts of interest impaired Sullivan's performance in the appeal. The first conflict arose from Sullivan's prior representation of Williams.[1] The second arose from Sullivan's own self-interest

---

[1] Neither the Supreme Court nor our Court has decided whether *Cuyler* applies to successive as opposed to concurrent

in not arguing that he had been ineffective at trial. Both arguments fall short.

1

Johnson's first *Cuyler* claim founders because Sullivan had forgotten his prior representation of Williams and thus lacked an actual conflict. The district court found that Sullivan, while representing Johnson, did not remember that he had represented Williams years earlier. We review that finding only for clear error, bearing in mind that a finding based on the credibility of coherent, internally consistent, and facially plausible witness testimony that is not contradicted by extrinsic evidence "can virtually never be clear error." *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985). Here, the district court's credibility finding was well supported.[2]

At the evidentiary hearing, Sullivan presented a coherent and believable account of his state of mind while representing Johnson. From 1985 to 1987, Sullivan represented Williams, who was charged with first-degree burglary and pleaded guilty to second-degree theft and unlawful entry. Sullivan testified that at no time during his representation of Johnson, from 1994 to 1996, did he remember that he previously had represented Williams. Sullivan explained that he had no system in place to run conflicts checks and, in particular, to make sure that he had not previously represented government witnesses. And

representations. *See Mickens v. Taylor*, 535 U.S. 162, 176 (2002); *United States v. Wright*, 745 F.3d 1231, 1233 (D.C. Cir. 2014). Because Johnson loses either way, we need not decide that issue.

[2] In ruling on Johnson's claim for ineffective assistance of trial counsel, the Superior Court did not determine whether Sullivan remembered having represented Williams. Consequently, we review only the district court's findings of fact.

Sullivan repeatedly testified that he did not recognize Williams at Johnson's trial. According to Sullivan, he did not recall his past representation of Williams until Johnson filed a bar complaint against him in 2007.

Sullivan's testimony was definitive, consistent, and plausible given the seven years and hundreds of cases that passed between his representations of Williams and Johnson. To be sure, Sullivan's failure to have and to use a reliable system for vetting potential conflicts was hardly ideal. But the only question in this appeal is one of fact concerning Sullivan's awareness of the conflict. In crediting Sullivan's testimony, the district court did not clearly err.

Johnson offers two main responses, but neither persuades. *First*, Johnson argues that Sullivan must have learned about the prior representation because he used an investigator to find government witnesses and generally ran public-record searches on them. But Sullivan testified that, in this case, his investigator had been unable to find Williams and that he conducted no background search after receiving from the government material detailing Williams's past criminal history. *Second*, Johnson notes that Sullivan apparently believed that he would have to disclose any conflict of interest to the government, not to Johnson. But even if Sullivan misunderstood the governing rules, he made no disclosure at all, which reinforces the district court's finding that he was unaware of the conflict.

The district court did not clearly err in finding that Sullivan, while representing Johnson, had forgotten his prior representation of Williams. Because an unknown conflict is not an actual conflict, Johnson's first *Cuyler* claim fails.

2

Johnson's second *Cuyler* claim arises from Sullivan's allegedly conflicting loyalty to Johnson and to himself. According to Johnson, Sullivan should have argued on appeal his own ineffectiveness at trial. And given the supposed conflict of interest, Sullivan's failure to make the argument should be analyzed under *Cuyler* rather than *Strickland*.

We conclude that there was no conflict, so we need not decide whether the kind of first-person conflict alleged by Johnson, if it existed, would trigger *Cuyler*. The district court credited Sullivan's testimony that, while handling the direct appeal, Sullivan did not believe that he had been ineffective at trial. This finding was not clearly erroneous—particularly because, as explained below, Sullivan's representation at trial was not constitutionally ineffective. And because Sullivan did not believe that he had been ineffective, he had no conflict with Johnson. Johnson's second *Cuyler* claim thus fares no better than his first.

C

We turn now to *Strickland*. Johnson argues that, even assuming no conflicts, Sullivan still provided ineffective appellate assistance. To establish this claim, Johnson must show that Sullivan performed deficiently and thereby prejudiced the appeal. *Strickland*, 466 U.S. at 687. A counsel's performance is deficient if it "fell below an objective standard of reasonableness," *id.* at 688, and prejudicial if there is at least a "reasonable probability" that it affected the outcome of the proceeding, *id.* at 694.

We have noted that "when it comes to ineffective-assistance claims leveled against *appellate* counsel, there is not

much daylight between *Strickland*'s deficiency prong and its prejudice prong." *Waters*, 896 F.3d at 570. That is because "[i]f appellate counsel reasonably opts not to raise an issue with little or no likelihood of success, then there is usually no reasonable probability that raising the issue would have changed the result of a defendant's appeal." *Id.* (quotation marks omitted).

Johnson rests his *Strickland* claims on Sullivan's failure to raise two arguments in the direct appeal: first, that the government concealed exculpatory and impeachment evidence in violation of *Brady*; and second, that Sullivan failed to provide effective assistance at trial.

1

The government violates *Brady* when it "(i) fails to disclose to the defense, whether willfully or inadvertently, (ii) exculpatory or impeachment evidence that is favorable to the accused, and (iii) the withholding of that information prejudices the defense." *United States v. Straker*, 800 F.3d 570, 603 (D.C. Cir. 2015) (per curiam). Prejudice exists if the withheld evidence is material, which requires "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Johnson*, 519 F.3d 478, 488 (D.C. Cir. 2008) (quotation marks omitted). When the government withholds multiple pieces of evidence, we consider their materiality cumulatively. *Kyles v. Whitley*, 514 U.S. 419, 436–37 (1995).

Johnson contends that Sullivan should have raised *Brady* claims based on the government's failure to timely disclose various pieces of evidence: first, shortly before Johnson's indictment, Williams was arrested on robbery charges that the government declined to prosecute; second, Williams and Keith

12

Nash both had extensive criminal backgrounds; third, Gary was a paid government informant, carried a gun on the night of the shootings, and had a case against her dismissed based on the intervention of a detective who testified at trial; fourth, Rowel agreed to speak to the police only after Gary assaulted her. Johnson contends that this evidence would have bolstered his claim that Williams pulled the gun used to kill Nash and would have helped him to impeach the government's witnesses.

Contrary to Johnson's arguments, there is almost no chance that this evidence, much of which was presented to the jury, would have changed the outcome of the trial if all of it had been timely disclosed to the defense. All four of the surviving witnesses other than Johnson agreed on the essential events of the shootings. Moreover, none of the *Brady* evidence would have undercut the testimony of Sharon Nash. And it is especially unlikely that she would have perjured herself to protect Williams if it was Williams—rather than Johnson— who was responsible for killing her brother and seriously wounding her as well.

Finally, and critically, undisputed forensic evidence showed that Johnson was the killer. First, recall the seating arrangements in the car at the time of the shootings. Everyone agreed that Keith Nash was driving, Johnson was seated in the far-left rear seat, and Williams was in the far-right rear seat. Sharon Nash, Williams, Gary, and Rowel all testified that Sharon was in the front passenger seat, while Johnson testified that she was in the rear passenger seat to the left of Williams. Next, consider the evidence about the Nashes' injuries. A medical examiner testified that Keith was shot twice on the left side of his neck, with one of the shots passing through his right lower cheek. Based on the soot rings on Keith's neck, he concluded that the shots were fired from three to four inches away. Sharon was shot just beneath her left breast.

Now compare that evidence with the two accounts offered at trial. Everyone but Johnson testified that Johnson, while sitting behind Keith or partially out of the driver's side rear door, put a gun to the back of Keith's neck while he was in the driver's seat. Then Johnson shot Keith twice and fired another shot into the car, which struck Sharon as she sat in the front passenger seat. That testimony was entirely consistent with the evidence that Keith was shot twice on the left side of his neck from very close range and that Sharon was shot in her left side.

Johnson's testimony was that Williams, from the far-right rear seat, pulled a gun on him. In response, Johnson reached over two other passengers, to Williams on the right side of the car, and tried to push the gun away. Then, during the ensuing struggle between Johnson and Williams, bullets from Williams's gun hit Keith in the driver's seat and Sharon, who Johnson says was sitting to the left of Williams. This testimony is inconsistent with the forensic evidence. Most damningly, it cannot explain how Keith was shot in the left side of his neck from a three- to four-inch distance. Nor, if Sharon was seated to the left of Williams in the crowded back seat, can it account for how a bullet struck her left side. None of the *Brady* material could alter these basic physical realities.

For these reasons, the disputed evidence was immaterial, so a *Brady* claim would have lost on appeal. And Sullivan was not ineffective "by declining to pursue a losing argument." *United States v. Watson*, 717 F.3d 196, 198 (D.C. Cir. 2013).

2

Johnson's final argument is that Sullivan was ineffective on appeal in failing to argue that he had been ineffective at trial. The supposed ineffectiveness at trial involved Sullivan's failure to pursue the *Brady* material discussed above. This

point simply repackages the losing *Brady* argument. Because the disputed evidence was immaterial, Sullivan's failure to pursue it did not prejudice Johnson. And because a claim of ineffective trial counsel thus would have been unsuccessful, Sullivan was not ineffective in omitting it from the appeal.

\*   \*   \*   \*

Because Johnson was not denied the effective assistance of appellate counsel, we affirm the district court's judgment.

*So ordered.*